[Cite as *State v. Clegg*, 2021-Ohio-2736.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 20 CAA 09 0035 |
| LOUIS H. CLEGG, JR. | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
Pleas, Case No. 19 CR I 12 0809


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      August 9, 2021


APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

HAWKEN FLANAGAN      MICHAEL A. MARROCCO
ASSISTANT PROSECUTOR      98 North Union Street
145 North Union Street, 3rd Floor      Delaware, Ohio 43015
Delaware, Ohio 43015

*Wise, J.*

{¶1}  Appellant Louis H. Clegg, Jr. appeals his conviction on one count of Rape entered in the Delaware County Court of Common Pleas following a jury trial.

{¶2}  Appellee is the state of Ohio.

### STATEMENT OF THE FACTS AND CASE

{¶3}  The relevant facts and procedural history are as follows:

{¶4}  On October 12, 2019, the victim in this case, T.M., went to Clancey's Pub in downtown Delaware, Ohio. (T. at 171). She went to the bar by herself but was planning on meeting a friend there. *Id.* She drove to the bar around 6:00 p.m. However, she first went the Backstretch, the bar next door, to use their Wi-Fi and had a drink. (T at 173). She went back and forth between the two establishments throughout the evening.

{¶5}  Shortly after 6:00 p.m., T.M. reached out to Appellant Louis H. Clegg, Jr. via Facebook messenger and invited him to join her. (T at 174, 362). T.M.  and Appellant had communicated via text in the past while playing Pokemon go games, however, it had been approximately a year prior to Appellant reaching out to her via text, the day before on October 11, 2019. (T at 169).

{¶6}  T.M. had a ride that was supposed to pick her up that night, however, her ride fell through. (T at 174). T.M. sporadically exchanged messages with Appellant throughout the evening asking him to give her a ride. (T at 176).

{¶7}  At 6:11 p.m. T.M. sent Appellant a text stating "[N]ot gonna lie, I'm pretty drunk alrwady" (sic). T.M. continued to drink after her friend left and went home. In her Facebook messenger texts to Appellant, T.M. stated she was "drunk," that she was "fucked up," and that she "couldn't see straight." (T. at 180, 191).

{¶8} T.M. and Appellant's recitation of the facts differ as to how T.M. ultimately arrived at Appellant's house.

{¶9} T.M. states Appellant messaged her later in the evening, drove to downtown Delaware and picked her up. She claims Appellant's drove her in his car where they talked on and off on the way back to his home. (T. at 177). T.M. testified that her recollection of the events that took place at Appellant's house are "blurry." (T. at 198). She stated that she has virtually no memory of the events. She thinks they talked, then she thinks they moved to the couch. (T. at 198). At some point she fell asleep and woke up on the floor with her jeans off but underwear on, with Appellant on the couch. (T. at 199).

She asked Appellant why her pants were off, and he said "Because I was touching you. And I know it was wrong, but I did it anyway." (T. at 199). She stated that she then went to the bathroom, put her jeans back on, collected her belongings and left at around 3:00 a.m. (T. at 200, 201). She walked to her car and drove away. She told the jury she never told Appellant that she wanted to engage in sexual activity. (T. at 203).

{¶10} Appellant testified that T.M. came over around midnight. He testified that T.M. walked to his residence, he invited her in and got her a blanket because she was shivering from the cold night. (T. at 366). He stated that she came in and took her shoes off and sat in a chair. He recalled that they started to talk and that at points throughout the conversation between the two, T.M. told him that she was not that drunk. (T. at 364). Appellant told the jury that T.M. began "cozying up" to him, making all sorts of innuendo, and at one point telling him she would "ride the heck out of you." (T. at 363, 367). Appellant claims that T.M. led him away from the couch, around the coffee table and

removed her jeans. (T. at 368). Appellant stated that he spread out a blanket on the floor, and that he and T.M. engaged in consensual sex at around 2:00 a.m. (T. at 364, 370, 374). He stated that T.M. fell asleep on the floor with a blanket. (T. at 363). Appellant said that T.M. woke up an hour later freaking out, got dressed, gathered her stuff and left.

{¶11} After she left Appellant's house, T.M. drove herself to Grady Memorial Hospital for a sexual assault exam. The Delaware Police Department was notified, and T.M. was initially interviewed by Officer Bell, and then Detective Bolen.

{¶12} Detective Michael Bolen testified that he was on-call on October 13, 2019, and he initially met with T.M. that morning at Grady Memorial Hospital. (T. at 277-279). He described the steps of his investigation, which included an interview of Appellant and the collection of Facebook Messenger records and security camera images from Appellant's home. (T. at 283-284, 288-289). A recording of Detective Bolen's interview with Appellant was played for the jury. (T. at 286). During the interview, Appellant initially denied that T.M. was at his home during the overnight hours between October 12 and 13, 2019. After Detective Bolen showed Appellant Facebook Messenger communication between Appellant and T.M., Appellant admitted that she was at his home during the time period in question. Appellant further acknowledged "fondling" T.M.'s vagina and acknowledged that he had engaged in vaginal intercourse with her. Appellant described T.M. as "staggering" when she came to his house, and he stated "I was thinking in the back of my head, Louis ... just don't do anything stupid. Don't do anything stupid. Then, a couple of hours go by and I was like ... still feeling really frisky ... and I'm like 'you know what, screw it.' This is a decision we'll have to live with." Appellant also stated "Was it a

bad decision because she was intoxicated? One hundred ten thousand percent very bad decision."

{¶13} On December 13, 2019, Appellant Louis H. Clegg, Jr. was indicted by a Delaware County Grand Jury on two counts of Rape, in violation of R.C. §2907.01. Both counts are identical but for language in Count Two stating, "in a separate incident as alleged in Count One."

{¶14} The matter was initially set for a jury trial to commence on March 10, 2020, but was later continued until June 23, 2020.

{¶15} On February 28, 2020, Appellant filed a Motion to Suppress, with the matter set for hearing on March 30, 2020. The hearing was reset for April 24, 2020, then to May 22, 2020.

{¶16} On June 2, 2020, Appellant's motion to suppress was denied.

{¶17} On April 16, 2020, counsel filed a motion to compel production of the discovery requested in Defendant's second request for discovery. The matter was set for hearing on May 1, 2020, but the motion was ultimately withdrawn after the material requested was provided by the State.

{¶18} On June 15, 2020, Appellant filed a Request for a Bill of Particulars, which was denied as untimely filed because the trial was scheduled for June 23, 2020.

{¶19} On June 22, 2020, the trial date was continued again, this time at the State's request, moving the matter to August 25, 2020. There was no renewal for a bill of particulars made.

**{¶20}** A jury trial commenced on August 25, 2020. At the conclusion of the trial, following deliberations, the jury found Appellant guilty of Count 2. The jury returned a not guilty verdict as to Count 1.

**{¶21}** On August 31, 2020, the trial court sentenced Appellant to serve an indefinite term of imprisonment with a minimum term of five (5) years and a maximum term of seven and a half (7½) years.

**{¶22}** Appellant now appeals, assigning the following error for review:

**ASSIGNMENT OF ERROR**

**{¶23}** "I. APPELLANT'S CONVICTION IS NOT SUSTAINED BY THE EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶24}** "II. THE COURT ERRED IN ITS DENIAL OF APPELLANT'S REQUEST FOR A BILL OF PARTICULARS.

**{¶25}** "III. INEFFECTIVE ASSISTANCE OF COUNSEL."

**I.**

**{¶26}** In his first assignment of error, Appellant argues that his conviction is against the manifest weight and sufficiency of the evidence. We disagree.

**{¶27}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to

determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶28} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, *supra*, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶29} In the instant case, Appellant was convicted of Rape, pursuant to R.C. §2907.02(A)(1)(c), which provides in relevant part:

> No person shall engage in sexual conduct with another when the other person's ability to resist or consent is substantially impaired because of a mental or physical condition, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition.

{¶30} At trial, the jury heard testimony from the victim T.M., Officer Stephen Bell, SANE nurse Jason Miller, BCI forensic scientist Allison Gapinksi, Det. Michael Bolen,

forensic computer scientist Charles Curtin, Tesla Reed (friend of the victim), and Appellant.

{¶31} The victim testified that on the evening of October 12, 2019, she drank throughout the evening, became intoxicated, and needing a ride, reached out to Appellant. (T. at 171-180). In her text messages to Appellant the victim communicated that she was "fucked up" and that she "couldn't see straight." (T. at 180). She testified that after Appellant picked her up at the bar, he gave her a ride to his house, where she recalled talking for a while and then falling asleep on the couch. (T. at 198). She testified that when she woke up, she found herself on the floor and her pants had been removed. (T. at 198-199). When she asked Appellant why her pants were off, Appellant stated "Because I was touching you. And I know it was wrong, but I did it anyway." (T. at 199). The victim testified that she got dressed, left Appellant's residence, located her car and drove herself to Grady Memorial Hospital. (T. at 199-200).

{¶32} Jason Miller, a sexual assault nurse examiner (SANE), testified that he performed the victim's sexual assault examination and how and what samples were collected. (T. at 237-245).

{¶33} Forensic Scientist Allison Gapinksi testified that she conducted the analysis of the samples collected during the sexual assault examination. (T. at 254). She explained the DNA analysis process and stated that her findings confirmed that Appellant's DNA was found on the swabs collected from the victim's vaginal area. (T. at 258-260).

{¶34} Detective Michael Bolen testified as to his interview with the victim at the hospital, the investigation process, security images collected from Appellant's residence,

the Facebook messenger records, and his interview with Appellant. (T. at 277-279, 283-284, 288-289). During the interview, Appellant initially denied that the victim was at his home on the night/morning of October 12-13, 2019. After being shown the Facebook messages sent back and forth between he and the victim, Appellant admitted that the victim was at his house during that time period and described her as staggering when she arrived. Appellant also admitted to "fondling" the victim's vagina and of engaging in vaginal intercourse with her. As set forth above, Appellant stated "I was thinking in the back of my head, Louis … just don't do anything stupid. Don't do anything stupid. Then, a couple of hours go by and I was like … still feeling frisky … and I'm like 'you know what, screw it.' This is a decision we'll have to live with." He then stated "Was it a bad decision because she was intoxicated? One hundred ten thousand percent very bad decision." The interview with Appellant was played for the jury. (T. at 286).

{¶35} The jury also heard testimony from Appellant and his version of the events that transpired.

{¶36} It is well-established that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216.

{¶37} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236,

1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

**{¶38}** Based on the record, we find Appellant's conviction is supported by sufficient evidence.

**{¶39}** We further find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175. The jury neither lost its way nor created a miscarriage of justice in convicting Appellant of rape, and Appellee presented evidence of his guilt beyond a reasonable doubt.

**{¶40}** Appellant's first assignment of error is overruled.

## II.

**{¶41}** In his second assignment of error, Appellant argues the trial court erred in denying his request for a bill of particulars.

**{¶42}** Pursuant to Crim.R. 7(E), a motion for a bill of particulars must be filed within twenty-one (21) days after arraignment but not later than seven (7) days prior to trial.

The purpose of a bill of particulars is to inform the accused of the exact nature of the charges against him so that he has an adequate opportunity to prepare a defense. *State v. Fowler* (1963), 174 Ohio St. 362, 189 N.E.2d 133.

**{¶43}** Here, Appellant's request for a bill of particulars was not filed within twenty-one days after arraignment. Rather, it was filed on June 15, 2020, approximately six (6) days before the trial was set to commence on June 23, 2020. Therefore, Appellant's request for a bill of particulars was not timely filed, and the trial court did not err in denying same. While the trial did end up being continued, Appellant did not renew his request for a bill of particulars.

**{¶44}** Furthermore, we conclude that any error in this case would be harmless, at most, and would not have affected the outcome of the case. While Appellant asserts that he was not apprised of the charges against him with the required degree of specificity, he cannot show that his ability to prepare a defense to the charges was hampered in any way by the failure of the State to provide a bill of particulars.

**{¶45}** No evidence has been presented, or suggested, by Appellant that he was unaware that "sexual conduct" alleged in the two Rape counts in the indictment were based on vaginal intercourse and/or vaginal penetration.  Appellant himself admitted to the sexual conduct, asserting however that the sexual conduct was consensual.

**{¶46}** The indictment in this case largely tracked the language of the applicable statutes and included all of the essential elements of the offenses charged. Crim.R. 7(B). Appellant has not demonstrated that the lack of a bill of particulars affected his substantial rights. Therefore, the error must be disregarded. Crim.R. 52(A).

**{¶47}** Appellant's second assignment of error is overruled.

**III.**

{¶48} In his third assignment of error, Appellant argues that he was denied the effective assistance of counsel. We disagree.

{¶49} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶50} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶51} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶52} Appellant alleges he received ineffective assistance of defense trial counsel in several instances, and we will examine each in turn.

*Bill of particulars*

**{¶53}** As set forth above in Assignment of Error II, we find that Appellant has not shown any prejudice as a result of the lack of a bill of particulars in this case. Appellant was not challenging the conduct that took place, rather he claimed that such conduct was consensual. As such, we do not find counsel's failure to make a timely request for a bill of particulars resulted in ineffective assistance of counsel.

*Hearsay testimony from Officer Stephen Bell*

**{¶54}** Appellant argues his counsel should have objected to certain hearsay statements made by Officer Stephen Bell regarding a summary of the statements the victim made at the hospital describing what had happened at Appellant's home.

**{¶55}** Upon review, we find that the jury heard the same statements and description of what occurred from the victim on direct examination and cross-examination. We therefore find no prejudice as a result of counsel's failure to object to same.

*SANE report*

**{¶56}** Appellant also argues counsel was ineffective in failing to object to the introduction of the SANE report.

**{¶57}** Evid.R. 803(4) allows, as an exception to the hearsay rule, the admission of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." The staff notes to the rule provide in pertinent part:

The circumstantial guaranty of trustworthiness of this exception is derived from the assumption that a person will be truthful about his physical condition to a physician because of the risk of harmful treatment resulting from untruthful statements. * * * The exception is limited to those statements made by the patient which are reasonably pertinent to an accurate diagnosis and should not be a conduit through which matters of no medical significance would be admitted. Staff Notes to Evid.R. 803(4).

**{¶58}** "The test under Evid.R. 803(4) goes solely to whether a statement was made for purposes of medical diagnosis or treatment. If a statement is made for purposes of diagnosis or treatment, it is admissible pursuant to Evid.R. 803(4)." *State v. Dever,* 64 Ohio St.3d 401, 414, 1992-Ohio-41, 596 N.E.2d 436.

**{¶59}** We further find that the victim's statements contained in the report were again the same as the testimony presented by the victim, therefore no prejudice resulted from same.

*Leading questions*

**{¶60}** While Appellant claims that the State used leading questions during the questioning of its witnesses, Appellant fails to cite this Court to any specific instances in the transcript or any prejudice that resulted therefrom.

**{¶61}** Based on the foregoing, we do not find that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

**{¶62}** Appellant's third assignment of error is overruled.

**{¶63}** For the forgoing reasons, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.

JWW/kw 0803