[Cite as *State v. Sims*, 2023-Ohio-1179.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

STATE OF OHIO,                          :

                    Plaintiff-Appellee,      :  Case No.  21CA15

v.                                      :

GRANT ADRIAN MYQUAL SIMS,        :  DECISION AND JUDGMENT ENTRY

       Defendant-Appellant.        :

_____

APPEARANCES:

Kort Gatterdam and Erik P. Henry, Columbus, Ohio, for appellant.

Keller J. Blackburn, Athens County Prosecuting Attorney, and
Merry M. Saunders, Athens County Assistant Prosecuting Attorney,
Athens, Ohio, for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:4-3-23
ABELE, J.

{¶1}    This is an appeal from an Athens County Common Pleas Court judgment of conviction and sentence.  A jury found Grant Adrian Myqual Sims, defendant below and appellant herein, guilty of two counts of rape, in violation of R.C. 2907.02(A)(2) and R.C. 2907.02(A)(1)(c).

{¶2}    Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SEVER THE RAPE CHARGES INTO SEPARATE TRIALS AND VIOLATED

APPELLANT'S DUE PROCESS AND FAIR TRIAL
RIGHTS GUARANTEED BY THE UNITED STATES AND
OHIO CONSTITUTIONS."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN ADMITTING HEARSAY
STATEMENTS AND VIOLATED APPELLANT'S RIGHTS
TO DUE PROCESS AND TO A FAIR TRIAL AS
GUARANTEED BY THE UNITED STATES AND OHIO
CONSTITUTIONS."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN ADMITTING MEDICAL
RECORDS AND EVIDENCE COLLECTION KITS THEREBY
VIOLATING APPELLANT'S RIGHTS TO DUE PROCESS
AND TO A FAIR TRIAL AS GUARANTEED BY THE
UNITED STATES AND OHIO CONSTITUTIONS."

FOURTH ASSIGNMENT OF ERROR:

"THE ADMISSION OF OTHER ACTS TESTIMONY AND
EVIDENCE REGARDING OFFENSES TO WHICH
APPELLANT PLED GUILTY TO VIOLATED RULES 403
AND 404 AND APPELLANT'S RIGHTS TO DUE
PROCESS AND TO A FAIR TRIAL AS GUARANTEED BY
THE UNITED STATES AND OHIO CONSTITUTIONS."

FIFTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN ADMITTING RECORDS
FROM THE BUREAU OF CRIMINAL INVESTIGATION
THEREBY VIOLATING APPELLANT'S RIGHTS TO DUE
PROCESS AND TO A FAIR TRIAL AS GUARANTEED BY
THE UNITED STATES AND OHIO CONSTITUTIONS."

SIXTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS
TO DUE PROCESS AND A FAIR TRIAL WHEN IT
ENTERED A JUDGMENT OF CONVICTION BASED ON
INSUFFICIENT EVIDENCE AND AGAINST THE
MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION
OF APPELLANT'S RIGHTS UNDER THE UNITED
STATES AND OHIO CONSTITUTIONS."
SEVENTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT IMPOSED A SENTENCE CLEARLY AND CONVINCINGLY CONTRARY TO LAW, THE RECORD CLEARLY AND CONVINCINGLY DOES NOT SUPPORT THE TRIAL COURT'S SENTENCING FINDINGS, AND THE SENTENCE IMPOSED IS INCONSISTENT WITH THE PURPOSES AND PRINCIPLES OF SENTENCING CONTRARY TO R.C. 2929.11 AND R.C. 2929.12 AND APPELLANT'S RIGHTS TO DUE PROCESS GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶3}   This appeal involves two separate encounters that occurred between appellant and J.K. and K.H.[1]  Appellant does not deny sexual encounters with the individuals, but instead contends that the encounters were consensual.

{¶4}   On October 24, 2018, appellant met J.R. at a hookah lounge.  The next day, J.R. told friends she had been sexually assaulted, and later sought an examination at a local hospital.

{¶5}   On September 18, 2019 or the early morning hours of September 19, 2019, appellant met K.H. after she spent many hours drinking alcohol.  When K.H. awoke the next day, she thought she had been raped and visited a hospital for examination.  The results of each examination identified appellant as the individual who had engaged in sexual contact

---

[1] Appellant also was charged with rape that involved a third individual, K.K.  The jury found appellant not guilty of this offense.  We therefore do not include additional details of appellant's encounter with K.K. unless relevant to appellant's assignments of error.

with J.R. and K.H.

{¶6}   On February 24, 2020, an Athens County Grand Jury returned an indictment that charged appellant with (1) three counts of rape, in violation of R.C. 2907.02(A)(2), (2) one count of rape in violation of R.C. 2907.02(A)(1)(c), (3) one count of theft, in violation of R.C. 2913.02(A)(1), and (4) one count of identity fraud, in violation of R.C. 2913.49(B)(1). Appellant pleaded not guilty to all charges.

{¶7}   Subsequently, appellant filed a motion to sever the charges for trial.  Appellant asserted that trying the cases together, with three different victims, would cause undue prejudice and allow the state to, in effect, introduce "other acts" evidence.  Appellant argued that trying the offenses together would cause him to suffer the following unfair prejudice: (1) the jury would hear "inflammatory accusations" that three individuals accused appellant of rape before hearing any evidence, which would "create an image of an individual predisposed to preying on women"; (2) the facts regarding "each incident contain slight similarities that present a strong likelihood the jury will confuse the incidents"; and (3) appellant's "ability to testify may be severely hampered." Appellant further asserted that the state could not overcome his showing of prejudice because the state could not establish that the evidence regarding the joined offenses would be admissible

as other-acts evidence, or that the evidence concerning each offense is simple and direct.

{¶8} The state, however, asserted that trying the offenses together would not prejudice appellant's right to a fair trial. The state disputed appellant's claim that joining the offenses would impede his ability to testify and claimed that the evidence would be simple and direct.

{¶9} After consideration, the trial court overruled appellant's motion to sever the charges into separate trials and stated that appellant "failed to furnish sufficient information to establish that his rights would be prejudiced by trying separate counts together at trial."

{¶10} On July 20 to July 23, 2020, the trial court held a jury trial. Before the trial began, appellant pleaded guilty to counts five and six: (1) theft, in violation of R.C. 2913.02(A)(1); and (2) identity fraud, in violation of R.C. 2913.49(B)(1).

{¶11} At trial, J.R. testified that, while she talked to a friend at a local hookah lounge, she noticed appellant enter the lounge. After they spoke and exchanged contact information, appellant unexpectedly kissed her. J.R. indicated she "was extremely uncomfortable and embarrassed."

{¶12} As J.R. prepared to leave the lounge, appellant asked her for a ride and she agreed. When they reached appellant's

residence, which happened to be very near to the lounge, appellant told J.R. to pull into a driveway. Once in the driveway, appellant "insisted" J.R. move to the vehicle's backseat. J.R. stated she became scared and did not exit the vehicle because "there would have been nowhere to go to." Additionally, J.R. stated that her car belonged to her grandfather and she did not feel she could abandon it.

{¶13} After J.R. followed appellant's instructions and crawled into the backseat, appellant removed her pants and undergarments, then began to perform cunnilingus and inserted his fingers into her vagina. J.R. told appellant "no" and that she did not want him to do that, but appellant did not stop. J.R. related that she "was panicking," her "body shut down," and she was crying. Appellant then began to place his penis inside her vagina.

{¶14} At that point, a car stopped next to them in the driveway and appellant exited. Before he did go, he told J.R. that "he thought that it might have been a kink for [her] to say no." J.R. responded, however, that she "really did mean no." J.R. then pulled up her pants, returned to the front seat and drove away. As she drove home, she stated she "was in a state of shock."

{¶15} J.R. explained that she went to work the day after the incident, but did not remember going to work and could not focus

on her job.  When a co-worker asked J.R. if she was okay, J.R. said she was not and told the co-worker that she should have called off work.

{¶16}  When the state introduced into evidence a copy of Facebook messages that J.R. exchanged with the manager of the hookah lounge, appellant objected and claimed the messages are hearsay.  The state asserted, however, that the messages are present sense impressions or excited utterances.  The trial court overruled appellant's objection.  J.R. then reviewed the exhibit that contained a copy of her Facebook message to the lounge owner, Maj.  In the message, J.R. asked Maj if he could "ban someone for [her]," and she "was just sexually assaulted."

{¶17}  The state also attempted to introduce into evidence another Facebook message that J.R. exchanged with a friend. After appellant objected, the trial court asked about the amount of time that elapsed between the incident and J.R.'s messages, and the state indicated that J.R. made the statements the next day.  The court then overruled the objection and J.R. testified that on October 25, 2018 she messaged her friend that she "was just sexually assaulted."

{¶18}  After J.R.'s testimony, the state informed the trial court that it intended to present testimony and evidence regarding J.R.'s medical records, and that appellant planned to object to the admission of those records.  Appellant argued that

the medical records did not fall within any hearsay exception, and instead, fell more within the realm of law enforcement investigative effort than statements related to medical treatment.  The trial court, however, overruled the objection.

{¶19}  At that point, registered Nurse Rachel Burns Carter testified that she performed J.R.'s intake examination.  During her testimony, Carter read directly from J.R.'s incident narrative and recited a direct quote from J.R.  Appellant did not object when Carter read directly from J.R.'s narrative. After Carter obtained J.R.'s narrative, she began the evidence-collection process.  When the state introduced the sexual-assault evidence-collection kit, appellant objected and wished to "renew the objection with the same basis."  The court noted, then overruled, appellant's objection.

{¶20}  K.H. testified that on September 18, 2019, she celebrated a friend's birthday and, throughout the night, consumed multiple alcoholic beverages.  K.H. stated that she does not remember every part of the evening and does not remember leaving the last bar she visited, but does remember sitting on her porch listening to music.  As K.H. sat on her porch, appellant approached her and commented on the music and "that's really all that [K.H.] remember[s]."  K.H. indicated that she does not remember anything else except "[t]he next thing" "is waking up the next day."

{¶21}  K.H. testified that when she eventually awoke around 1:30 p.m., she "was completely naked" and "like covered in piss."  When K.H. visited the bathroom she also discovered bleeding from her anus.  She then looked for her belongings and discovered her purse had been rummaged through and her debit card missing.  K.H. then left her house and visited a restaurant.  As she waited in line at the restaurant, she told a friend about the previous night's events and stated, "I think I got raped last night actually."  At that point, K.H. went home to call her mother.

{¶22}  The state next introduced into evidence a text message from K.H. to her boss the day after the encounter.  Appellant objected and asserted the message constitutes inadmissible hearsay, but the state argued that the statement is an excited utterance.  The trial court overruled appellant's objection, but determined the state could not introduce the printed text message into evidence.  The prosecutor then asked K.H. to read her text message, "hey something really traumatic happened to me last night and I do not (inaudible).  Will you please work my five to close tonight?"  After she sent the text message, K.H. visited the hospital.

{¶23}  K.H. later discovered that someone had used her debit card at multiple locations and spent approximately $1,500.  The state introduced evidence that appellant had used the debit

card, but appellant objected regarding the specific locations and the use of the debit card. In particular, appellant argued that because he had pleaded guilty to theft and identity fraud, any evidence regarding the debit card is not relevant. The state asserted, however, that the evidence is relevant to show how police apprehended appellant. The trial court agreed and overruled appellant's objection.

{¶24} After K.H.'s testimony, the state indicated that it intended to present evidence regarding K.H.'s medical records. Although appellant again argued that the medical records did not fall within any hearsay exception, the trial court overruled the objection. Registered Nurse Jennifer Young then testified that on September 19, 2019, she performed K.H.'s sexual-assault examination. During her testimony, Young read directly from K.H.'s incident narrative and stated that it is a direct quote from K.H. Appellant did not object.

{¶25} After the state presented the individual accounts of each incident and each individual's nurse's testimony, the state introduced testimony from forensic scientists who tested DNA obtained from the medical kits. Shortly after Bureau of Criminal Investigation forensic scientist Devonie Herdeman began to testify, appellant objected to the BCI reports, as well as the corresponding testimony, and asserted that because the reports and testimony contain the words "offense" and "victim,"

the use of those terms suggests "a rape has occurred and that [appellant] did it." Appellant also argued that the reports constitute inadmissible hearsay and Evid.R. 803(8) prohibits the reports because they are similar to a police officer's report of an investigation. The trial court, however, overruled appellant's objection. Herdeman and other BCI forensic scientists then testified that the DNA obtained during the medical examinations matched appellant's DNA profile.

{¶26} The state next called to testify forensic toxicologist Dr. George Behonick, who stated that K.H. had a .146% blood ethanol concentration when submitted on September 19, 2019 at 5:00 p.m. Dr. Behonick also explained the effects alcohol has on the nervous system and, as the blood-alcohol concentration surpasses .3%, a person can appear to be "in a stupor" or "comatose," and the person's memory impaired.

{¶27} Appellant testified in his defense and admitted he engaged in sexual contact with J.R. and K.H., but maintained the contact had been consensual. Appellant explained that he met J.R. at the hookah lounge and thought they made a connection, so he kissed her. When the lounge closed, he asked J.R. for a ride home, and she agreed. When he and J.R. arrived in his driveway he told J.R. he did not like the front seat and that he "want[ed] to get in the backseat with [her]," J.R. agreed. Once in the backseat, appellant told J.R. she looked beautiful and he

wanted to kiss her.  Appellant then engaged in oral sex with J.R. and he thought "it was okay for us to have sex," but when he placed his penis on J.R., she began to cry and, when she started to cry, he "immediately put [his] penis away." Appellant told J.R. that he was "sorry" if she thought it was "too much."  According to appellant, J.R. responded, "no I just feel like I'm a hoe." Appellant said that he and J.R. then exchanged contact information and J.R. left.

{¶28}  The next day, appellant messaged J.R. to ask if he left his marijuana inside her car.  When J.R. did not immediately respond, he called her.  J.R. later messaged appellant to ask where he thought he left his marijuana. Appellant, however, eventually found his marijuana in his house and then texted J.R. to let her know and to apologize for the previous night.

{¶29}  Appellant also testified that he met K.H. while he urinated in an alley.  Appellant claimed that K.H. tapped him on the shoulder, invited him to her residence, and once at the residence, he visited and exited the bathroom and K.H. was "naked and ready to engage in sex."  Appellant stated that he engaged in "anal, oral, [and] vaginal" sex with K.H.

{¶30}  Appellant further stated that, after he engaged in sexual relations, he used the bathroom.  When he again exited the bathroom and found K.H. asleep, he decided to leave the

residence.  Before doing so, he took K.H.'s debit card and cash.

{¶31}  On July 23, 2021, after hearing the evidence and counsels' arguments, the jury found appellant (1) guilty of the rape offense that involved J.R., (2) not guilty of an alleged rape offense that involved K.K., (3) not guilty of the R.C. 2907.02(A)(2) rape offense that involved K.H., and (4) guilty of the R.C. 2907.02(A)(1)(c) rape offense that involved K.H.

{¶32}  The trial court sentenced appellant to serve (1) 11 years in prison for each rape count, with a possible maximum term of 16 years and 6 months, (2) 12 months for the theft offense, and (3) 18 months for the identity fraud offense.  The court further ordered the sentences for the rape offenses and the identity fraud offense to be served consecutively to one another for a total minimum term of 23 years and 6 months, with a maximum term of 29 years.  This appeal followed.

I

{¶33}  In his first assignment of error, appellant asserts that the trial court erred by denying his Crim.R. 14 motion to sever the rape charges, which involved three different victims, into separate trials.  In particular, appellant asserts that to allow the cases to be tried together caused him prejudice because it (1) permitted the state to introduce inadmissible other-acts evidence that would not have been admissible if the cases had been tried separately, (2) impacted his "right to

testify" in that "he would be required to 'testify as to all of the allegations against him' or risk the jurors questioning why he would testify to some, but not all, of the allegations," and (3) included evidence regarding the three encounters that is not simple or direct.

{¶34} The state argues that the trial court did not abuse its discretion because it could have introduced evidence regarding each occurrence as other-acts evidence or, alternatively, the evidence regarding each crime is simple and direct.

{¶35} Crim.R. 8(A) specifies that "[t]wo or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged * * * are of the same or similar character * * *." The rule further permits the joinder of offenses that "are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

{¶36} As a general rule, the law favors joinder and the avoidance of multiple trials. *E.g., State v. Gordon*, 152 Ohio St.3d 528, 2018-Ohio-259, 98 N.E.3d 251, ¶ 18. Joint trials "conserve[] judicial and prosecutorial time, lessen[] the not inconsiderable expenses of multiple trials, diminish[] inconvenience to witnesses, and minimize[] the possibility of

incongruous results in successive trials before different juries." *State v. Thomas*, 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980); *accord Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), quoting *Richardson v. Marsh*, 481 U.S. 200, 209, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts'"). If, however, joinder prejudices a defendant, Crim.R. 14 gives a trial court discretion to sever the trials: "If it appears that a defendant * * * is prejudiced by a joinder of offenses * * *, the court shall order an election or separate trial of counts, * * *, or provide such other relief as justice requires."

**{¶37}** Appellate courts review trial court decisions regarding a Crim.R. 14 motion to sever criminal charges under the abuse of discretion standard. *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 106; *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 166. An abuse of discretion implies that a court's attitude is unreasonable, arbitrary or unconscionable. "'A decision is unreasonable if there is no sound reasoning process that would support that decision.'" *Ford* at ¶ 106, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "[A]n 'arbitrary' decision is one

made 'without consideration of or regard for facts [or] circumstances.'" *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, 97 N.E.3d 474, ¶ 12, quoting Black's Law Dictionary 125 (10th Ed.2014), and citing *Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359, 423 N.E.2d 1095 (1981), quoting Black's Law Dictionary 96 (5th Ed.1979) ("arbitrary" means "'without adequate determining principle; * * * not governed by any fixed rules or standard'"). An unconscionable decision is one "showing no regard for conscience" or "affronting the sense of justice, decency, or reasonableness." Black's Law Dictionary (11th ed. 2019). An unconscionable decision also may be characterized as "[s]hockingly unjust or unfair." Black's Law Dictionary (11th ed. 2019). Moreover, when reviewing for an abuse of discretion, appellate courts must not substitute their judgment for that of the trial court. *E.g., State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, 172 N.E.3d 8, ¶ 187; *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991).

**{¶38}** "A defendant who appeals the denial of relief bears a heavy burden" to establish that a trial court abused its discretion. *Ford* at ¶ 106. To establish that a trial court's refusal to sever a trial constitutes an abuse of discretion, a defendant must establish that holding combined trials prejudiced the defendant's rights. *Gordon* at ¶ 21; *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992). The test is

> whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his or her discretion in only one way — by severing the trial. * * * A defendant must show clear, manifest and undue prejudice and violation of a substantive right resulting from failure to sever.

*State v. Schiebel*, 55 Ohio St.3d 71, 89, 564 N.E.2d 54 (1990), quoting *United States v. Castro*, 887 F.2d 988, 996 (9th Cir. 1989). A defendant must provide "the trial court with sufficient information so that it [can] weigh the considerations favoring joinder against the defendant's right to a fair trial." *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus; *accord Ford* at ¶ 106. Consequently, "a trial court does not abuse its discretion in refusing to grant severance where the prejudicial aspects of joinder are too general and speculative." *State v. Payne*, 10th Dist. Franklin App. No. 02AP-723, 2003-Ohio-4891.

**{¶39}** If a defendant presents sufficient information to show that joining offenses for trial will prejudice the defendant's rights, the state can overcome the defendant's claim of prejudicial joinder by showing either: (1) the state could have introduced evidence of the joined offenses as other acts under Evid.R. 404(B) (the other-acts test); or (2) the "evidence of each crime joined at trial is simple and direct" (the joinder test). *E.g., State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). "'The two tests are disjunctive, so that the

satisfaction of one negates a defendant's claim of prejudice without consideration of the other.'" *State v. Wright*, 4th Dist. Jackson No. 16CA3, 2017-Ohio-8702, ¶ 51, quoting *State v. Sullivan*, 10th Dist. Franklin No. 10AP-997, 2011-Ohio-6384, ¶ 23. Accordingly, "'[i]f the state can meet the joinder test, it need not meet the stricter 'other acts' test.'" *State v. Johnson*, 88 Ohio St.3d 95, 109, 723 N.E.2d 1054 (2000), quoting *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991).

{¶40} Evidence of joined offenses is simple and direct when (1) the jury is capable of readily separating the proof required for each offense; (2) the evidence is unlikely to confuse the jurors, (3) the evidence is straightforward and easy to understand; (4) the offenses involve different victims, different incidents, and different witnesses; and (5) little danger exists that the jury would improperly consider testimony on one offense as corroborative of the other. *State v. Freeland*, 4th Dist. No. 12CA3352, 2015-Ohio-3410, ¶ 14; *accord State v. Pate*, 2021-Ohio-1838, 173 N.E.3d 567, ¶ 57 (2nd Dist.); *State v. Wright*, 4th Dist. Jackson No. 16CA3, 2017-Ohio-8702, ¶ 52; *State v. Dantzler*, 10th Dist. Franklin No. 14AP-907, 2015-Ohio-3641, ¶ 23; *State v. Clifford*, 135 Ohio App.3d 207, 212, 733 N.E.2d 621 (1st Dist.1999). Furthermore, "'Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses

or victims without significant overlap or conflation of proof.'"
*State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138,
¶ 16, quoting *State v. Lewis*, 6th Dist. No. L-09-1224, 2010-
Ohio-4202, ¶ 33.

{¶41}  We additionally note that the purposes of the joinder
test are (1) "to prevent the finder of fact from confusing the
offenses," *State v. Varney*, 4th Dist. Hocking No. 07CA18, 2008–
Ohio–5283, ¶ 19, and (2) "to prevent juries from combining the
evidence to convict" the defendant of multiple crimes, "instead
of carefully considering the proof offered for each separate
offense."  *State v. Mills*, 62 Ohio St.3d 357, 362, 582 N.E.2d
972 (1992).

{¶42}  In the case sub judice, we agree with the appellee
that the evidence of each crime joined at trial is simple and
direct.  The prosecution presented the evidence that related to
each offense in a simple and direct manner, and separately
presented the circumstances of each individual's encounter with
appellant.  The state first presented J.K.'s testimony and the
testimony of the nurse who conducted her examination.  Next, the
state presented K.K's testimony, the testimony of the nurse who
conducted her examination, and the testimony of a witness with
K.K. during the evening of K.K.'s encounter with appellant.
After the state presented the evidence that surrounded K.K.'s
encounter with appellant, the state presented K.H.'s testimony

and the testimony of the nurse who conducted her examination. After the state presented testimony from law enforcement officers involved in the investigations, the state introduced the forensic evidence involved with the three individuals.  All forensic evidence identified appellant as the contributor of the DNA recovered during the examinations.

{¶43}  After our review, we conclude that the evidence adduced at trial is not complicated or confusing, and the state presented the evidence in a logical manner.  The evidence is, in fact, simple and direct.  *See State v. Kuck*, 2016-Ohio-8512, 79 N.E.3d 1164, ¶ 43 (2nd Dist.) (evidence simple and direct when prosecution first presented evidence that involved one victim then presented evidence that involved other victim); *State v. Clyde*, 6th Dist. Erie No. E-14-006, 2015-Ohio-1859, ¶ 38, quoting *State v. Lewis*, 6th Dist. Lucas Nos. L-09-1224, L-09-1225, 2010-Ohio-4202, ¶ 33 (evidence simple and direct when "each victim testified as to his or her own experiences with [the defendant]" and stating joinder not prejudicial when "'the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof'"); *State v. Meeks*, 5th Dist. Stark No.2014CA17, 2015-Ohio-1527, ¶ 99 (evidence simple and direct when state "clearly laid out [the offenses] for the jury" and "[e]ach victim testified separately"); *State v. Hillman*, 10th Dist. Franklin

Nos. 14AP-252 and 14AP-253, 2014-Ohio-5760, 26 N.E.2d 1236, ¶ 40 (evidence simple and direct when incidents "involved a simple set of facts and a limited number of witnesses whose testimony was straightforward"); *State v. Moshos*, 12th Dist. Clinton No. CA2009-0608, 2010-Ohio-735, ¶ 82 (evidence simple and direct when each victim "provided a detailed description of her own unwanted sexual encounters with appellant"); *State v. Kissberth*, 2nd Dist. Montgomery No. 20500, 2005-Ohio-3059, ¶ 62 (evidence simple and direct when witnesses "testified only to their own experiences with" the defendant); *State v. Ahmed*, 8th Dist. Cuyahoga No. 84220, 2005-Ohio-2999, ¶ 26 (evidence simple and direct when "[e]ach victim testified as to the specific facts giving rise to her separate charges against" the defendant).

{¶44} Furthermore, we find nothing in the record to suggest that the jury could not separate the evidence with respect to each offense, or that the jury could have been confused. Most notably in the case at bar, we emphasize that the jury sifted through all the evidence and found appellant not guilty of the rape allegation that involved one victim, K.K., and not guilty of the R.C. 2907.02(A)(2) rape allegation that involved K.H. *See State v. Sutton*, 8th Dist. Cuyahoga No. 102300, 2015-Ohio-4074, ¶ 25 ("[T]he jury's not guilty verdicts on several of the charges demonstrated the jury's ability to apply the evidence separately to each offense."); *State v. Evans*, 4th Dist. Jackson

No. 10CA1, 2012-Ohio-1562, ¶ 38 ("Because the jury acquitted [the defendant] of one of the charges, we cannot find that the jury was confused by the evidence, overwhelmed by the number of counts, or influenced by the cumulative effect of the joinder."); *State v. Villa*, 2d Dist. Montgomery No. 18868, 2002-Ohio-2939, ¶ 51 ("[A] jury's acquittal of a defendant on one or two charges establishes that the defendant was not prejudiced by the joinder of the charges against him").  Thus, in light of the jury's verdict in the case sub judice, we believe that the record indicates that the jury considered each of the three individual's encounters with appellant separately, and could appropriately separate the state's proof with respect to each charge.

**{¶45}**  Moreover, we do not agree with appellant that the failure to sever the charges negatively impacted his right to testify.  Appellant argues that, if the trial court separated the offenses into separate trials, he could have chosen to testify in some of the trials and remain silent in others without jeopardizing his defense concerning other offenses.  Appellant thus argues that the failure to separate the offenses into separate trials forced him to testify regarding all alleged offenses, even though he may have chosen to remain silent if the offenses had been separated for trial.

**{¶46}**  To establish that the failure to separate offenses for

trial prejudiced a defendant's right to testify, a "defendant must make a convincing showing that he has important testimony to give concerning one cause, and a strong need to refrain from testifying in the other." *State v. Roberts*, 62 Ohio St.2d 170, 176, 405 N.E.2d 247 (1980). Additionally, the defendant "must produce sufficient information regarding the nature of the testimony he wishes to give in the one case, and his reasons for not wishing to testify in the other, so as to satisfy the court that his claim of prejudice is genuine." *Id.*

{¶47} After our review in the case sub judice, we do not believe appellant presented any convincing reasons to support his argument that he might have chosen to testify in some of the cases, but not others. *See generally State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 66 ("defendant's mere desire to testify to only one count is an insufficient reason to require severance"). Here, appellant did not establish "a strong need to refrain from testifying" in one case, and "important testimony" to give in any other case. Thus, appellant has not established sufficient prejudice to warrant separate trials.

{¶48} We further note that courts have determined that any prejudice that may result from the joinder of offenses is minimized when a trial court cautions a jury before deliberations to consider each count, and the evidence

applicable to each count, separately, and to state its findings as to each count uninfluenced by its verdict on any other counts. *State v. Freeland*, 4th Dist. Ross No. 12CA3352, 2015-Ohio-3410, ¶ 16, citing *State v. Gibson*, 6th Dist. Lucas No. L-13-1223 and L-13-1222, 2015-Ohio-1679, ¶ 30. In the case at bar, we recognize that the trial court instructed the jury to consider each count, and the evidence applicable to each count, separately. Specifically, the trial court stated:

> The four charges set forth in this case constitute separate and distinct matters. You must consider each charge and the evidence applicable to each charge separately. And you must state your findings as to each charge uninfluenced by your verdict as to the other charges. The Defendant may be found guilty or not guilty of any or all of the charged offenses.

Thus, we believe the trial court's instruction minimized any possible prejudice that could result from the joinder of the offenses for trial.

**{¶49}** Consequently, after our review in the case sub judice we do not believe that the trial court abused its discretion by overruling appellant's motion to separate the trials. Here, a review of the record reveals that the evidence is simple and direct, and the jury could segregate the evidence when it determined whether the state had established, beyond a reasonable doubt, that appellant committed the charged offenses.

**{¶50}** Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II

{¶51}  In his second assignment of error, appellant asserts that the trial court erred by admitting into evidence certain hearsay statements.  In particular, appellant contends that the court abused its discretion by admitting into evidence the following messages: (1) Facebook messages that J.R. exchanged with the hookah bar owner and with her friend; and (2) text message K.H. sent to her boss.

{¶52}  Appellant argues these statements are not relevant and their prejudicial effect substantially outweigh any probative value.  Appellant further alleges that the statements should not be admitted into evidence under the present-sense-impression or excited-utterance exceptions to the hearsay rule because, appellant reasons, neither J.R. nor K.H. sent the messages at the time they perceived the events or while under the stress of excitement.  Instead, appellant contends that both J.R. and K.H. sent their messages after sufficient time passed to reflect upon events.

A

{¶53}  Initially, we observe that trial courts typically enjoy broad discretion to determine whether a declaration falls within a hearsay exception.  *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97 (hearsay rulings ordinarily reviewed for abuse-of-discretion unless

constitutional rights implicated under Confrontation Clause);

*State v. Dever*, 64 Ohio St.3d 401, 410, 596 N.E.2d 436 (1992)

("trial court has broad discretion to determine whether a

declaration should be admissible as a hearsay exception").

Appellate courts, therefore, generally will not disturb a trial

court's evidentiary ruling unless the court "'has clearly abused

its discretion and the defendant has been materially prejudiced

thereby.'" *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-

1594, 63 N.E.3d 93, ¶ 61, quoting *State v. Issa*, 93 Ohio St.3d

49, 64, 752 N.E.2d 904 (2001).  As we noted earlier, an abuse of

discretion implies that a court's attitude is unreasonable,

arbitrary or unconscionable.  *E.g., State v. Clinton*, 153 Ohio

St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 60 citing *Blakemore*

*v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

   **{¶54}**  In the case sub judice, as we explain below, we do not

believe that the trial court abused its discretion by allowing

the state to introduce J.R.'s and K.H.'s out-of-court

statements.

B

   **{¶55}**  Appellant argues that the statements in question are

not relevant under Evid.R. 401 and, even if relevant, the

prejudicial effect substantially outweighs any probative value.

We first note, however, that appellant does not point to the

record where he objected to the statements based on relevancy or

prejudicial impact.  Instead, as noted in appellant's brief, appellant objected to J.R.'s out-of-court statements for the following reasons: "the messages constituted out-of-court declarations, an attempt to bolster J.R.'s credibility, and extrinsic evidence of her character, and also lacked foundation."  Appellant's Brief at 13.  Moreover, when appellant objected to K.H.'s testimony, he objected on the basis of hearsay and further argued it is "duplicative and redundant extrinsic evidence."  Trial Transcript Day Two at 82.  Thus, because appellant did not argue before the trial court that the statements are not relevant or are unfairly prejudicial, he may not raise these issues for the first time on appeal.  *See generally State v. Russell*, 4th Dist. Ross No. 21CA3750, 2022-Ohio-1746, ¶ 90 (objecting on one basis does not preserve other unmentioned grounds); *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 30 (may not raise argument on appeal not raised in trial court).

{¶56}  Appellate courts may, however, consider a forfeited argument using a plain-error analysis.  *See Risner v. Ohio Dept. of Nat. Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 27 (reviewing court has discretion to consider forfeited constitutional challenges); *see also Hill v. Urbana*, 79 Ohio St.3d 130, 133-34, 679 N.E.2d 1109

(1997), quoting *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus ("'[e]ven where [forfeiture] is clear, [appellate] court[s] reserve[] the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it'"); *State v. Pyles*, 7th Dist. Mahoning No. 13-MA-22, 2015-Ohio-5594, ¶ 82, quoting *State v. Jones*, 7th Dist. No. 06-MA-109, 2008-Ohio-1541, ¶ 65 (plain-error doctrine "'is a wholly discretionary doctrine'"); *DeVan v. Cuyahoga Cty. Bd. of Revision*, 8th Dist. Cuyahoga, 2015-Ohio-4279, 45 N.E.3d 661, ¶ 9 (appellate court retains discretion to consider forfeited argument); *see Rosales-Mireles v. United States*, ___ U.S. ___, 138 S.Ct. 1897, 1904, 201 L.Ed.2d 376 (2018) (court has discretion whether to recognize plain error).

{¶57} For the plain error doctrine to apply, the party claiming error must establish (1) that "'an error, i.e., a deviation from a legal rule'" occurred, (2) that the error was "'an "obvious" defect in the trial proceedings,'" and (3) that this obvious error affected substantial rights, i.e., the error "'must have affected the outcome of the [proceedings].'" *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d 1001, 1003 (1982) ("A 'plain error' is obvious

and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings").

**{¶58}** In the case before us, we do not believe that the trial court obviously erred by failing to conclude that the statements are irrelevant, or that the prejudicial effect of the statements substantially outweighed any probative value. Consequently, the plain-error doctrine does not apply to appellant's relevancy and prejudicial-effect arguments.

C

**{¶59}** Appellant next argues that the statements constitute inadmissible hearsay. Appellant disputes the state's assertion that the trial court properly admitted the statements under the excited-utterance exception.

**{¶60}** Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is inadmissible in evidence at trial, unless it falls under an exception to the Rules of Evidence. Evid.R. 802; *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930 (2014), ¶ 129; *State v. Lykins*, 4th Dist. Adams No. 18CA1079, 2019-Ohio-3316, ¶ 92.

**{¶61}** Evid.R. 803(2) contains the excited-utterance

exception.  This rule permits a trial court to admit a hearsay

statement into evidence "if it relates 'to a startling event or

condition made while the declarant was under the stress of

excitement caused by the event or condition.'"  *State v. Fry*,

125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 100,

quoting Evid.R. 803(2).  A court may admit a hearsay statement

under the excited utterance exception under the following

circumstances:

> "(a) there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement of declaration spontaneous and unreflective,
> (b) the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,
> (c) the statement or declaration related to such startling occurrence or the circumstances of such starling occurrence, and
> (d) the declarant had an opportunity to observe personally the matters asserted in his statement or declaration."

*State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d

948, ¶ 166, quoting *Potter v. Baker*, 162 Ohio St. 488, 124

N.E.2d 140 (1955), paragraph two of the syllabus.

{¶62}  The excited-utterance "'exception derives its guaranty

of trustworthiness from the fact that declarant is under such

state of emotional shock that his reflective processes have been

stilled.  Therefore, statements made under these circumstances

are not likely to be fabricated.'"  *State v. Taylor*, 66 Ohio

St.3d 295, 300, 612 N.E.2d 316 (1993), quoting McCormick,

Section 297 (2d ed. 1972).  Additionally, excited utterances

> "are considered more trustworthy than hearsay generally
> on the dual grounds that, first, the stimulus renders
> the declarant incapable of fabrication and, second, the
> impression on the declarant's memory at the time of the
> statement is still fresh and intense. Accordingly, Rule
> 803(2) assumes that excited utterances are not flawed by
> lapses of memory or risks of insincerity."

*Id.*, quoting 1 Weissenberger's Ohio Evidence (1992), Section

803.16.

{¶63}  In the case sub judice, appellant challenges the

state's assertion that J.R. and K.H. made their statements while

under stress of nervous excitement.  Appellant asserts that

because J.R. and K.H. made their statements the day after the

events, the evidence fails to show that nervous excitement

continued until the time of the statements.  Instead, appellant

argues that both J.R. and K.H. had sufficient time to reflect

upon events and their statements constitute a narration of

events, rather than excited utterances.

{¶64}  The amount of time that elapses "between the statement

and the event is relevant but not dispositive of" whether a

declarant's statement occurred while still under the stress of

the startling occurrence.  *Jones* at ¶ 168, quoting *Taylor*, 66

Ohio St.3d at 303; *State v. Wallace*, 37 Ohio St.3d 87, 90, 524 N.E.2d 466 (1988). In fact, "'[t]here is no per se amount of time after which a statement can no longer be considered to be an excited utterance.'" *Jones* at ¶ 168, quoting *Taylor*, 66 Ohio St.3d at 303. Instead, "'[t]he central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought.'" *Id.*, quoting *Taylor*, 66 Ohio St.3d at 303; *Stough v. Indus. Comm.*, 142 Ohio St. 446, 52 N.E.2d 992 (1944), paragraph one of the syllabus ("A declaration or statement, to be admissible as part of the res gestae, is not required to be exactly simultaneous with the primary fact in controversy, but it must be a spontaneous or an impulsive declaration or statement and not the mere narration of a past transaction").

{¶65} A court that must determine whether a declarant's statement occurred while under stress of the startling occurrence must examine the particular facts of the case and not "'"attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order that it be termed a spontaneous exclamation."'" *Jones* at ¶ 168, quoting *Taylor*, 66 Ohio St.3d at 303, quoting *State v. Duncan*, 53 Ohio St.2d 215, 219-220, 373 N.E.2d 1234 (1978). Furthermore, reviewing courts should affirm a trial court's

conclusion that a statement fits the excited-utterance exception when its "'decision appears to be a reasonable one, even though the reviewing court, if sitting as a trial court, would have made a different decision.'"  *Taylor*, 66 Ohio St.3d at 305, quoting *Potter,* 162 Ohio St. at 499-500.  In *Jones*, the court determined the declarant's statement to be an excited utterance when the evidence showed that the declarant "was highly upset and screaming" when she "blurted out" the circumstances of the startling event (i.e., learning that defendant killed a person). *Id.* at ¶ 169.  The court concluded that the declarant's demeanor, when making the statement, showed that she remained "under the influence of the startling occurrence when she made her excited utterance."  *Id.*, citing *State v. Wallace*, 37 Ohio St.3d 87, 90-91, 524 N.E.2d 466 (1988) (statement excited utterance even though 15-hour interval between startling occurrence and utterance and declarant unconscious for part of that time), and *State v. Baker*, 137 Ohio App.3d 628, 649, 739 N.E.2d 819 (12th Dist.2000) (several-hour interval between startling occurrence and utterance); *State v. Huertas*, 51 Ohio St.3d 22, 31, 553 N.E.2d 1058 (1990) (statement excited-utterance when "declarant was 'very agitated,' 'in serious pain' and 'had not calmed down' from the stress of" startling event, i.e., a stabbing).

{¶66}  However, simply remaining "upset" after a startling

occurrence "does not meet the standard for admissibility under Evid.R. 803(2)." *Taylor*, 66 Ohio St.3d at 303. In *Taylor*, the circumstances that surrounded the declarant's statement suggested he had time to reflect on the event and to give "a narrative account" of the event. *Id.* In that case, the declarant was murdered, but days before his death he spoke with Robert Adams, a plumber who performed repairs at the residence of the declarant's paramour and the defendant's grandmother, Viola Thomas. At trial, Adams testified that the declarant told Adams that he spent the night at Viola's residence while the defendant also stayed overnight and, during the night, he discovered the defendant rummaging through the declarant's clothing. When the declarant asked the defendant why, the defendant told the declarant that he was looking for cigarettes, but the declarant explained to Adams that he told the defendant that the defendant knew that the declarant "smoked cigars, not cigarettes." *Id.* at 297. The declarant also informed Adams that the defendant "was going to do something to [the declarant] then but [Viola] prevented it." *Id.* The declarant also told Adams that the defendant "had threatened to kill him." *Id.* The declarant further advised Adams that the defendant "was mistreating [Viola], had broken into her house, and because of his laziness, was a burden on her." *Id.* Later, the defendant was convicted of multiple offenses and sentenced to death.

**{¶67}** On appeal to the Ohio Supreme Court, the defendant asserted that the trial court erred by allowing Adams's hearsay testimony and argued that Adams's testimony did not fit the excited-utterance exception to the hearsay rule. The supreme court agreed, and pointed out that the primary dispute concerned whether the declarant made the statements while still "under the stress of the startling occurrence." *Id.* at 301. The court noted that the appellate court had concluded that the "startling occurrence" happened when the declarant found the defendant searching his pants and when the defendant threatened to kill the declarant. *Id.* The appellate court thus determined that these circumstances placed the declarant "in a state of nervous excitement" and that the declarant's "nervous excitement continued to dominate" until the next day when he "relayed the events to Adams." *Id.* The Ohio Supreme Court, however, concluded that the appellate court's conclusion lacked "evidentiary support." *Id.* The court observed that the declarant made several similar statements to Adams throughout the course of the day – beginning at 8:00 a.m. and ending sometime in the afternoon and, during each recounting of the occurrence, the declarant stated that the defendant threatened to kill him. In deciding whether the declarant's statements fit the excited-utterance exception, the court noted that the record contained only one reference to the declarant's "state of

agitation." *Id.* at 303.  The court pointed out that when Adams responded to a question about whether the declarant appeared "real upset," Adams stated that the declarant "was upset.  He just said he loved [Viola], and if he didn't care for her he wouldn't come around." *Id.*  The court explained, however, that "[m]erely being 'upset' clearly does not meet the standard for admissibility under Evid.R. 803(2) because it does not show that [the declarant's] statements were not the result of reflective thought." *Id.*  The court wrote:

> Indeed the balance of Adams's testimony regarding [the declarant's] statements indicates just the opposite: that [the declarant] was reflecting on the event and giving a narrative account to Adams which was the result of his reflective thought.  [The declarant] commented on [the defendant's] laziness for remaining asleep all day instead of assisting Adams to reduce [Viola's repair] bill.  The statements included other grievances [the declarant] had against [the defendant] which had occurred long before the "startling occurrence" as well as conduct by [the defendant] that [the declarant] considered to be detrimental to * * * Viola Thomas.  The comments also included [the declarant's] conclusion that were it not for the fact of his love for Viola Thomas, he would not continue to visit her home.

*Id.*

The court concluded that the declarant's

> statements clearly indicate that [he] was reflecting on the events of the previous night, considering other aspects of his relationship with [the defendant] and [the defendant's] relationship with his grandmother as well as the effect on [the declarant's] relationship with [Viola].

*Id.*

{¶68} Thus, the *Taylor* court determined that the evidence failed to show that the declarant's "reflective faculties were still dominated by 'nervous excitement.'" *Id.* Consequently, the declarant's statement did not fall within the excited-utterance exception.

{¶69} Appellant contends that *Taylor* should govern the outcome in the case sub judice because the circumstances that surrounded J.R.'s and K.H.'s statements demonstrate that each had sufficient time to reflect upon the occurrences and their statements appear to be a narrative account of events rather than a continuation of nervous excitement. We believe, however, that the traumatic nature of a sexual assault, and the ensuing reaction to that assault, may not quickly dissipate and may, in fact, continue for an extended period of time after the traumatic event. For that reason, those determinations must be made on a case-by-case basis in light of the unique facts present in each case. Courts may recognize that a sexual assault victim may suffer more than some typical nervous excitement, but instead suffer from severe, life-changing trauma. Nevertheless, after our review in the case sub judice, we conclude that any error that the trial court may have arguably committed when it admitted the statements in question constitutes harmless error.

{¶70} Crim.R. 52(A) provides: "Any error, defect,

irregularity, or variance which does not affect substantial rights shall be disregarded." An error is harmless when the error did not impact the verdict, the error was harmless beyond a reasonable doubt, and after excising the erroneously admitted evidence, the remaining evidence establishes the defendant's guilt beyond a reasonable doubt. *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 37. Additionally, "the admission of hearsay is harmless error where the declarant was also a witness and examined regarding matters identical to those contained in the hearsay statements." *State v. Williams*, 2d Dist. Montgomery No. 26369, 2016-Ohio-322, ¶ 37.

{¶71} In the case sub judice, J.R. testified and gave direct testimony that closely mirrored the statements contained in her Facebook messages. Thus, J.R.'s testimony about her Facebook messages was cumulative to her in-court statements that appellant sexually assaulted her. K.H. likewise gave direct testimony that appellant sexually assaulted her. Her text message to her boss is simply cumulative to her direct testimony. Consequently, any arguable error in this regard constitutes, at most, harmless error. *State v. Blanton*, 4th Dist. Adams No. 16CA1031, 2018-Ohio-1275, ¶ 71, citing *State v. L.E.F.*, 10th Dist. Franklin No. 13AP-1042, 2014-Ohio-4585, ¶ 14 ("[I]nsofar as [victim]'s statements may have been [inadmissible], we conclude such admission constitutes harmless

error because the statements were cumulative of [victim]'s live trial testimony, which was subject to cross-examination."); *State v. Williams*, 2d Dist. Montgomery No. 26369, 2016-Ohio-322, ¶ 37 ("the admission of hearsay is harmless error where the declarant was also a witness and examined regarding matters identical to those contained in the hearsay statements"); *State v. Deanda*, 2014-Ohio-3668, 17 N.E.3d 1232, ¶ 39 (3rd Dist.) ("[h]earsay statements admitted that are repetitious of admissible statements and are supported by overwhelming evidence are not prejudicial"); *State v. Stone*, 4th Dist. Scioto No. 11CA3462, 2013-Ohio-209, ¶ 14 (victim's hearsay testimony that person assaulted her harmless error when victim presented in-court testimony of sexual assault); *see State v. Williams*, 38 Ohio St.3d 346, 350, 528 N.E.2d 910 (1988) (admission of hearsay that was cumulative testimony constitutes harmless error).

{¶72} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

III

{¶73} In his third assignment of error, appellant asserts that the trial court erred by admitting (1) J.R.'s and K.H.'s sexual-assault medical records and evidence collection kits, and (2) their respective nurses' testimony regarding the statements that each individual made during the sexual-assault examinations. Appellant contends that (1) this evidence does

not fall within the  Evid.R. 803(4) medical-diagnosis-and-treatment exception, and (2) the reading of the narration of the events constitutes the needless presentation of cumulative evidence under Evid.R. 403(B).

A

**{¶74}** Once again, we note that the admission of evidence generally falls within a trial court's sound discretion and an appellate court will not reverse a trial court's evidentiary decision absent an abuse of that discretion.

B

**{¶75}** Evid.R. 803(4) contains a hearsay exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

**{¶76}** The hearsay rules except statements made for the purpose of medical diagnosis or treatment due to the inherent reliability underlying the nature of those statements.

> [A] fundamental assumption underlying the medical-treatment exception is that that particular hearsay is reliable. *Dever*, 64 Ohio St.3d at 410-411, 596 N.E.2d 436. "[The] exception is premised on the theory that a patient's statements to her physician are likely to be particularly reliable," *United States v. Tome* (C.A.10, 1995), 61 F.3d 1446, 1449, and "carr[y] special guarantees of credibility," *White v. Illinois* (1992), 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848.

*State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 39.

**{¶77}** Additionally, statements made for the purpose of

medical diagnosis and treatment are considered reliable because "'facts reliable enough to be relied on in reaching a diagnosis have sufficient trustworthiness to satisfy hearsay concerns.'" *State v. Dever*, 64 Ohio St.3d 401, 411, 596 N.E.2d 436 (1992), quoting 2 McCormick on Evidence (4th Ed.1992) 250; *accord Muttart* at ¶ 41.  Thus, "[i]f a statement is made for purposes of diagnosis or treatment, it is admissible pursuant to Evid.R. 803(4)." *Muttart* at ¶ 34, quoting *Dever*, 64 Ohio St.3d at 414.

{¶78}  In general, statements made while a medical professional obtains a victim's history, such as whether a defendant's penis entered the victim's vagina, generally fall within the medical-diagnosis-and-treatment exception. *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 37-38.  For example, statements that identify a defendant as the perpetrator of a crime, where the defendant touched the victim, and how sexual contact occurred ordinarily are statements obtained for medical diagnosis and treatment. *State v. Felts*, 2016-Ohio-2755, 52 N.E.3d 1223 (4th Dist.), ¶ 39, citing *Arnold* at ¶ 32, 38 ("information regarding the identity of the perpetrator, the type of abuse alleged, and the time frame of the abuse allows the doctor or nurse to determine whether to test the child for sexually transmitted infections"); *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, ¶ 27, quoting *In re D.L.*, 8th Dist. Cuyahoga No. 84643, 2005-Ohio-

2320, ¶ 21 ("'courts have consistently found that a description of the encounter and identification of the perpetrator are within scope of statements for medical treatment and diagnosis'"); *State v. Williams*, 1st Dist. Hamilton No. C-140199, 2015-Ohio-3968, ¶ 31 ("Obtaining a thorough history regarding the causation and nature of the injury is an important component of medical diagnosis and treatment"); *State v. Taylor*, 8th Dist. Cuyahoga No. 101704, 2015-Ohio-2513, ¶ 44 ("statements regarding the identity of the perpetrator, the type of abuse alleged, the time frame of the abuse, and the identification of the areas where the child had been touched, were all for medical diagnosis").

**{¶79}** On the other hand, statements merely serve an investigative purpose when they do not help the treatment provider diagnose a medical condition or recommend treatment. Thus, a rape victim's statement that the defendant "shut and locked the bedroom door before raping her; her descriptions of where her mother and brother were while she was in the bedroom with [the defendant], of [the defendant]'s boxer shorts, of him removing them, and of what [the defendant]'s "pee-pee" looked like; and her statement that [the defendant] removed her underwear" "likely were not necessary for medical diagnosis or treatment." *Arnold* at ¶ 34.

**{¶80}** In the case sub judice, we first point out that

appellant objected before the state introduced each nurse's testimony and each medical kit.  When he objected, however, appellant broadly asserted that the nurses' testimony and medical kits are inadmissible under Evid.R. 803(4). Additionally, appellant did not object when the nurses read each individual's narrative statement, and did not attempt to distinguish between statements contained within those narratives that may have been made for medical diagnosis and treatment and those solely for investigative purpose.

**{¶81}**  We observe that for each assignment of error presented for review, an appellant must identify the specific parts of the record where the alleged error occurred.  *See* App.R. 16(A)(7) (brief must include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies").  "This rule is designed 'to aid the reviewing court in determining whether any reversible error occurred in the lower court by having the complaining party specify the exact location(s) where such a determination can be made.'"  *Mayfair Village Condominium Owners Assn. v. Grynko*, 8th Dist. Cuyahoga No. 99264, 2013-Ohio-2100, ¶ 6, quoting *Hildreth Mfg. v. Semco, Inc.*, 151 Ohio App.3d 693, 2003-Ohio-741, 785 N.E.2d 774, ¶ 32 (3d Dist.).  Consequently, an appellate court

may disregard an assignment of error when an appellant fails to identify the relevant portions of the record upon which an assignment of error is based.  *See* App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * *."); *see also Mayfair Village Condominium Owners Assn.* at ¶ 6 (appellate court "not obliged to scour the record in search of evidence to support an appellant's assignment of error."), citing *Nob Hill E. Condominium Assn. v. Grundstein*, 8th Dist. Cuyahoga No. 95919, 2011-Ohio-2552, ¶ 11.

{¶82}  In the case before us, appellant cites to parts of the record that contain broad objections to the nurses' testimony and medical kits.  Appellant does not, however, cite to the location that contains objections to particular statements that he believes served an investigative purpose, rather than an Evid.R. 803(4) medical-diagnosis-or-treatment purpose.  Without citation to the specific parts of the nurses' testimony that appellant believes fall outside of the Evid.R. 803(4) medical-diagnosis-or-treatment exception, we need not parse the testimony to determine whether the trial court properly admitted each statement contained in the narratives.

{¶83}  Additionally, although we recognize that appellant's reply brief points to specific, objectionable statements,

appellant did not raise these same specific objections during the trial court proceedings.  *See State v. S.A.A.*, 10th Dist. Franklin No. 17AP-685, 2020-Ohio-4650, ¶ 20 (declining to review argument regarding admissibility of statements contained in videotaped interview when appellant "did not specifically outline the same questions before the trial court" and instead "argued generally at trial that the entire video interviews were for purposes of forensic investigation").  We therefore decline to review them for the first time on appeal.

**{¶84}**  Moreover, to the extent that appellant may have lodged a continuing objection to the evidence, we observe that "[t]he purpose of a continuing or standing objection is to relieve a party who has unsuccessfully raised an objection from having to repeat the objection every time 'testimony of the same class' is offered."  *State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections*, 144 Ohio St.3d 579, 2015-Ohio-5306, 45 N.E.3d 994, ¶ 48, quoting *Brady v. Stafford*, 115 Ohio St. 67, 152 N.E. 188 (1926), paragraph two of the syllabus.  A single continuing objection is not, however, sufficient to preserve objections to multiple pieces of evidence when the admissibility determinations turn on different facts.  *State v. Henness*, 79 Ohio St.3d 53, 59, 679 N.E.2d 686 (1997) ("[t]he existence of the marital privilege turns on the specific circumstances surrounding each allegedly privileged communication, e.g.,

whether a third party was present" and thus, continuing

objection insufficient to preserve error).  *See generally State*

*v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶

41 (same interview or interrogation might contain both

admissible and inadmissible statements).

{¶85}  Thus, even if the record suggests that appellant may

have raised a continuing objection to the nurses' testimony,

this continuing objection, in our view, did not sufficiently

preserve objections to each statement when the admissibility of

each statement required the trial court to separately analyze

whether the statement was made for medical diagnosis or

treatment, or whether the statement was made for investigative

purposes.  Importantly, appellant does not cite any authority to

require the wholesale exclusion of a nurse's testimony when it

contains a mix of statements made for medical diagnosis or

treatment, and statements arguably made for investigative

purposes.

{¶86}  Therefore, for all of the foregoing reasons, we do not

believe that appellant properly preserved his Evid.R. 803(4)

objections to the nurses' testimony.  However, even if he had

properly preserved those objections, we believe that any

arguable error the trial court committed in the admission of

that testimony into evidence, to the extent that it relayed

statements made for an investigative purpose, constitutes

harmless error.  Here, the nurses' testimony simply repeated what each individual victim stated during their direct in-court testimony at trial: "[a]ny error in the admission of hearsay is generally harmless where the declarant of the hearsay statement is cross-examined on the same matters and the seemingly erroneous evidence is cumulative in nature."  *In re M.E.G.*, 10th Dist. Franklin Nos. 06AP-1256, 06AP-1257, 06AP-1258, 06AP-1263, 06AP-1264, and 06AP-1265, 2007-Ohio-4308, ¶ 32; *accord State v. Bender*, 3rd Dist. Union No. 14-19-22, 2020-Ohio-722, ¶ 17.

{¶87}  In the case at bar, the individuals who were the subject of the nurses' testimony testified at trial in open court, and subject to cross-examination.  *Bender* at ¶ 17; *State v. Clegg*, 5th Dist. Delaware No. 20 CAA 09 0035, 2021-Ohio-2736, ¶ 59.  The jury had the opportunity to view the witnesses and to assess their credibility.  *See Bender* at ¶ 17; *State v. Ceron*, 8th Dist. Cuyahoga No. 99388, 2013-Ohio-5241, ¶ 61.

{¶88}  Thus, we believe that any arguable error that may have occurred in this case concerning the testimony of the nurses and the medical records constitutes harmless error that we must disregard.

C

{¶89}  Appellant further contends that the testimony of the nurses was needlessly cumulative.

{¶90}  Evid.R. 403(B) provides: "Although relevant, evidence

may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." We note that "Evid.R. 403(B) does not require exclusion of cumulative evidence. The court has discretion to admit or exclude it." *State v. Campbell*, 69 Ohio St.3d 38, 51, 630 N.E.2d 339 (1994). "The mere fact that evidence is repetitive will not be considered reversible error unless the defendant was unfairly prejudiced thereby." *State v. Baker*, 2d Dist. Montgomery No. 23933, 2011-Ohio-1820, ¶ 16, citing *State v. Smith*, 80 Ohio St.3d 89, 108-109, 684 N.E.2d 668 (1997). "The pertinent question is whether the evidence was unfairly prejudicial to the defendant, not whether it was unfavorable to him." *Id.*

{¶91} In the case sub judice, we do not believe that the trial court abused its discretion by allowing the state to introduce cumulative evidence. Nothing in the record shows that the cumulative evidence unfairly prejudiced appellant. Each witness testified about their personal encounter with a victim and related to the trier of fact the nature of that encounter.

D

{¶92} Next, appellant argues that the nurses' testimony is improper because it bolstered J.R.'s and K.H.'s testimony. Appellant does not, however, cite any authority that prevents a party from using another witness's testimony to bolster a

complaining witness's testimony.  In fact, courts have held that "'[a] party may introduce testimony to "bolster" or corroborate another witness's testimony as long as the testimony is relevant and not objectionable on specific evidentiary grounds.'"  *State v. Watkins*, 10th Dist. Franklin No. 12AP-345, 2013-Ohio-804, ¶ 22, quoting *State v. Hurst*, 10th Dist. Franklin No. 98AP-1549 (Mar. 7, 2000); *State v. Culp*, 9th Dist. Summit No. 26188, 2012-Ohio-5395, ¶ 30 (evidence corroborating victim's testimony is relevant to the victim's credibility).  We therefore reject appellant's argument that the trial court erred by admitting the nurses' testimony on the basis that it improperly bolstered the complaining witnesses' testimony.  Here, the witness related the factual nature of their examination and did not offer opinion about a victim's veracity.

{¶93}  Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

IV

{¶94}  In his fourth assignment of error, appellant asserts that the trial court erred by allowing the state to introduce other-acts evidence for the two offenses (theft and identity fraud) to which he pled guilty.  Appellant asserts that the evidence was not relevant to prove an element in dispute and that this evidence is needlessly cumulative.

Evid.R. 404(B)[2] provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

R.C. 2945.59 similarly states:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

---

[2] On July 1, 2022, Evid.R. 404(B) was amended to read as follows:

(B) Other Crimes, Wrongs or Acts.
(1) Prohibited Uses. Evidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
(2) Permitted Uses; Notice. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. The proponent of evidence to be offered under this rule shall:
(a) provide reasonable notice of any such evidence the proponent intends to introduce at trial so that an opposing party may have a fair opportunity to meet it;
(b) articulate in the notice the permitted purpose for which the proponent intends to offer the evidence, and the reasoning that supports the purpose; and
(c) do so in writing in advance of trial, or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

{¶95} Evid.R. 404(B) and R.C. 2945.59 "preclude[] the admission of evidence of other crimes, wrongs, or acts offered to prove the character of an accused in order to show that the accused acted in conformity therewith, but it does not preclude admission of that evidence for other purposes." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, syllabus. In other words, other-acts evidence is not admissible when the sole purpose of the evidence "is to show the accused's propensity or inclination to commit crime." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 20, quoting *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975), citing 1 Underhill's Criminal Evidence, Section 205, at 595 (6th Ed.1973). Other-acts evidence is admissible, however, so long as the evidence relates to a permissible purpose such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). Accordingly, other-acts evidence is admissible when (1) the evidence is relevant, (2) the evidence is not used "to prove a person's character to show conduct in conformity," (3) the evidence is offered "for a legitimate other purpose," and (4) the danger of unfair prejudice does not substantially outweigh the probative value of the evidence. *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.2d 841, ¶ 72, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶

20.

{¶96} Appellate courts review a trial court's determination regarding whether other-acts evidence constitutes impermissible propensity evidence or permissible nonpropensity evidence using the de-novo standard of review. *Hartman* at ¶ 22, citing Leonard, The New Wigmore: Evidence of Other Misconduct and Similar Events, Section 4.10 (2d Ed.2019) ("[d]etermining whether the evidence is offered for an impermissible purpose does not involve the exercise of discretion * * *, an appellate court should scrutinize the [trial court's] finding under a de novo standard" of review); *State v. Ludwick*, 4th Dist. Highland No. 21CA17, 2022-Ohio-2609, ¶ 18; *State v. McDaniel*, 2021-Ohio-724, 168 N.E.3d 910, ¶ 17 (1st Dist.). If the proffered other-acts evidence is for a permissible purpose, trial courts have discretion, under Evid.R. 403(A), to determine whether the danger of unfair prejudice substantially outweighs the probative value of the evidence. *Hartman* at ¶ 30; *Williams* at ¶ 17 (Evid.R. 404(B) affords courts discretion to allow other-acts evidence when offered for a permissible purpose). Appellate courts thus review a trial court's decision under Evid.R. 403 for an abuse of discretion. *Hartman* at ¶ 30; *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 72; *Ludwick* at ¶ 18. Other-acts evidence is relevant if it tends "to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Propensity evidence "almost always * * * will have some relevance." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 25. In fact, propensity "evidence is excluded 'not because it has no appreciable probative value but because it has too much.'" *Id.*, quoting 1A Wigmore, Evidence, Section 58.2, at 1212 (Tillers Rev.1983). The relevancy inquiry in Evid.R. 404(B) cases thus does not focus upon "whether the other-acts evidence is relevant to the ultimate determination of guilt." *Id.* at ¶ 26. Instead, courts must determine whether the evidence is relevant to a "'purpose other than the person's character or propensity to behave in a certain way.'" *Id.*, quoting *United States v. Gomez*, 763 F.3d 845, 860 (7th Cir.2014).

{¶97} Both Evid.R. 404(B) and R.C. 2945.59 permit other-acts evidence when the evidence is relevant to establishing a defendant's intent. Other-acts evidence is relevant to establish intent if the evidence tends "'[t]o show, by similar acts or incidents, that the act in question was not performed inadvertently, accidentally, involuntarily, or without guilty knowledge.'" *Id.* at ¶ 52, quoting McCormick, Evidence, Section 190, at 804 (4th Ed.1994). "[T]he other-acts evidence 'must be so related to the crime charged in time or circumstances that evidence of the other acts is significantly useful in showing

the defendant's intent in connection with the crime charged.'"
*Id.* at ¶ 58, quoting 1 Wharton's Criminal Evidence at Section
4:31.  The evidence "'"must have such a temporal, modal and
situational relationship with the acts constituting the crime
charged"'" that it "'"discloses purposeful action in the
commission of the offense in question."'"  *Id.* at ¶ 61, quoting
*State v. Gardner*, 59 Ohio St.2d 14, 20, 391 N.E.2d 337 (1979),
quoting *State v. Burson*, 38 Ohio St.2d 157, 159, 311 N.E.2d 526
(1974).

**{¶98}**  Additionally, evidence of other acts is admissible
when "the challenged evidence plays an integral part in
explaining the sequence of events and is necessary to give a
complete picture of the alleged crime."  *State v. Thompson*, 66
Ohio St.2d 496, 498, 422 N.E.2d 855 (1981); *accord State v.
Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, 172 N.E.3d 8, ¶ 140;
*Hartman* at ¶ 41.  Furthermore, evidence regarding other acts
"may be presented when 'they are so blended or connected with
the one on trial as that proof of one incidentally involves the
other; or explains the circumstances thereof; or tends logically
to prove any element of the crime charged.'"  *State v.
Wilkinson*, 64 Ohio St.2d 308, 317, 18 O.O.3d 482, 415 N.E.2d
261, 269 (1980), quoting *United States v. Turner*, 423 F.2d 481,
483-84 (C.A.7, 1970) (citation omitted).

**{¶99}**  In the case at bar, we believe that evidence regarding

appellant's other contemporaneous acts was relevant to establish appellant's intent by disproving his claim that his sexual encounters with the victim was consensual. *See State v. Gardner*, 59 Ohio St.2d 14, 20, 13 O.O.3d 8, 391 N.E.2d 337 (1979) (when defendant claims sexual encounter consensual, defendant's intent is a material issue). The evidence that appellant took the victim's debit card immediately after the rape, then later used the card at multiple locations, helped to demonstrate appellant's guilty knowledge and negate his consent defense. The other acts evidence shared a temporal and situational relationship with K.H.'s rape so as to disclose his purposeful action in committing rape. This evidence tended to make it more probable that appellant did not commit rape inadvertently, accidentally, involuntarily, or without guilty knowledge.

**{¶100}** Moreover, the other-acts evidence constituted an integral component to help to explain the sequence of events and necessary to provide the trier of fact with a complete picture of the rape – the evidence flowed directly and immediately from appellant's interaction with K.H. and helped to explain the entire sequence of events.

**{¶101}** Additionally, even if we accept for purposes of argument that the trial court erred by allowing the state to introduce evidence concerning appellant's theft and identity-fraud offenses, we believe that any such error is harmless error

that we must disregard.  *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 32 ("[A]n improper evidentiary admission under Evid.R. 404(B) may be deemed harmless error on review when, after the tainted evidence is removed, the remaining evidence is overwhelming").  In the case sub judice, even without the evidence regarding appellant's theft and identity-fraud offenses, the record contains overwhelming first-person accounts and evidence that appellant raped J.R. and K.H. Both victims testified at trial.  J.R. stated that appellant engaged in unwanted sexual contact with her and that she told appellant, "no."  K.H. testified that due to excessive alcohol consumption she had very little recollection of the encounter, but when she awoke the next day, she discovered that she had been raped.  Appellant did not deny sexual encounters with both J.R. and K.H.  Instead, appellant asserted that they engaged in consensual sex.  As we further explain in appellant's sixth assignment of error, we believe that the state presented ample evidence to establish appellant's guilt beyond a reasonable doubt.  Moreover, we again point out that after hearing the evidence the jury found appellant not guilty of one of the three charged rape offenses.  Thus, any arguable error that stemmed from the admission of evidence that appellant stole K.H.'s debit card and then used it to purchase items that totaled approximately $1,500 did not impact the jury's verdict.  We do

not believe that any danger exists that the jury convicted appellant of the two counts of rape based upon evidence that he stole K.H.'s debit card and made purchases. Consequently, any error did not affect appellant's substantial rights and is harmless error that we must disregard. See Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded").

{¶102} Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.

V

{¶103} In his fifth assignment of error, appellant asserts that the trial court erred by admitting into evidence records from the Bureau of Criminal Investigation. Appellant points out that at trial, he objected to admitting the reports into evidence because the reports "included boilerplate language suggest[ing] the rape offenses had occurred and each accuser was in fact a 'victim.'" Appellant claims that the use of the term "victim" is unfairly prejudicial and bolstered the testimony of J.R. and K.H. Appellant additionally objected at trial because the reports are "no different than giving jurors a police report that tracks what a witness told a police officer." On appeal, appellant argues that the "BCI employees certainly qualified as law enforcement personnel" under Evid.R. 803(8) and, thus, the rule should preclude admitting the reports into evidence.

A

{¶104} Once again, we note that the admission of evidence at trial generally falls within the trial court's sound discretion, and an appellate court will not reverse a court's evidentiary decision absent an abuse of that discretion. In *State v. Madden*, 2017-Ohio-8894, 100 N.E.3d 1203, (10th Dist.), the court rejected the argument that the use of the word "victim" during a criminal trial constitutes prejudicial error when (1) "the fact of an assault was not in dispute," (2) the "witnesses used the term 'victim' as synonymous with complainant," (3) the witnesses "did not express an opinion as to appellant's guilt," and (4) the prosecutor did not "intentionally [seek] to elicit prejudicial testimony from the witnesses at issue." *Id.* at ¶ 34. In reaching its decision, the court explained:

> This court has noted that "[a] 'victim' is a 'person harmed by a crime, tort, or other wrong.'" *State v. Morock*, 10th Dist. No. 14AP-559, 2015-Ohio-3152, ¶ 25, citing Black's Law Dictionary (10th Ed.2014). Similarly, it has been held that use of the term "'victim' is not the same as expressing an opinion that the defendant was guilty of a crime; the term 'victim applies to anyone who suffers either as a result of ruthless design or incidentally or accidentally.'" *State v. Chism*, 130 Wash.App. 1054, Wash.App. No. 54895-6-I (Dec. 27, 2005), quoting Webster's Third New International Dictionary 2550 (1993).
> Courts in other jurisdictions have held that "[t]he term 'victim' is used appropriately during trial when there is no doubt that a crime was committed and simply the identity of the perpetrator is in issue." *Jackson v. State*, 600 A.2d 21, 24 (Del.1991). *See also In re Welfare of P.J.K.*, Minn.App. No. A15-0115 (Sept. 8, 2015) (where issue at trial was not whether an armed

robbery actually occurred but, rather, whether the state could prove beyond a reasonable doubt who committed it, occasional reference to individual as "victim" was "accurate and not prejudicial").

As noted above, most of the references to "victim" in the present case are in the context of law enforcement officers recounting their role in the investigation. Courts have observed that "the term 'victim,' to law enforcement officers, is a term of art synonymous with 'complaining witness.'" *Jackson* at 24-25. Thus, courts have found a lack of prejudice where a law enforcement officer uses the term "victim" in such a manner. *See State v. Frey*, Iowa App. No. 7-205/06-1081, 2007 WL 1827423 (June 27, 2007) (defense counsel not ineffective in failing to object to use of the term victim where detective "used the term 'victim' as synonymous with the term 'complainant'"); *see also State v. Wigg*, 179 Vt. 65, 70, 889 A.2d 233 (2005) (finding harmless error where a law enforcement officer uses the term victim as synonymous with complainant and "never expressed an opinion" that the defendant was guilty); *State v. Harvey*, 167 Wash.App. 1026, Wash.App. No. 29513-3-III (Mar. 29, 2012) (questions by prosecutor that elicited police officers to refer to individuals shot as "victims" not improper; "referring to the men who died from gunshot wounds as victims does not amount to opinion testimony").

Appellant relies on this court's decision in *State v. Almedom*, 10th Dist. No. 15AP-852, 2016-Ohio-1553, in support of his contention that reversible error occurred. That case, however, is distinguishable from the facts of this case. At issue in *Almedom* was whether a crime took place, i.e., whether the defendant had sexual conduct with girls under the age of 13. Further, under the facts of Almedom, "the trial court judge consistently referred to the girls as 'victims,'" which this court deemed analogous to "telling the members of the jury that the girls were truthful when they claimed that sexual abuse occurred." *Id.* at ¶ 2. By contrast, in the present case there was no dispute that A.S. was physically assaulted and seriously injured, and the record contains no victim references by the trial court.

*Id.* at ¶ 30-33.

{¶105} After our review in the case sub judice, we agree with

the *Madden* court's holding and rationale.  Applying this rationale to the instant case, we do not believe that use of the word "victim" on BCI forms unfairly prejudiced appellant. First, no one disputed that sexual encounters had, in fact, occurred between appellant and the three individuals.  Second, the forms "used the term 'victim' as synonymous with complainant."  Third, appellant did not point to anything in the record to suggest that any witness used the term "victim" to "express an opinion as to appellant's guilt."  Last, the record does not indicate that the prosecutor "intentionally sought to elicit prejudicial testimony" regarding the three individuals' status as "victims."  *Id.* at ¶ 34.

{¶106} Consequently, we do not agree with appellant that the trial court abused its discretion by admitting the BCI reports into evidence.

B

{¶107} Appellant next asserts that the trial court should have excluded the BCI reports because they do not fall within an exception to the hearsay rule.  Appellant contends that under Evid.R. 803(8), the BCI reports are inadmissible as "matters observed by police officers and other law enforcement personnel."  The state, however, argues that the BCI reports are business records and admissible under Evid.R. 803(6).

Evid.R. 803(8) provides as follows:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness.

**{¶108}** Thus, "[i]n criminal cases, Evid.R. 803(8)(b) excludes from the public-records-and-reports exception to hearsay police reports that 'recite an officer's observations of criminal activities or observations made as part of an investigation of criminal activities.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 111, quoting *State v. Ward*, 15 Ohio St.3d 355, 358, 474 N.E.2d 300 (1984).

**{¶109}** In the case sub judice, appellant has summarily asserted that the BCI reports fall within the Evid.R. 803(8)(b) exclusion, but does not cite authority to support his proposition.  Under App.R. 16(A)(7), an appellant's brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."  Appellate courts should not perform independent research to create an argument for a litigant. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266,

2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part), quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) ("'"appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them"'"); *accord State v. Lykins*, 4th Dist. Adams No. 18CA1079, 2019-Ohio-3316, ¶ 57. "[W]e cannot write a party's brief, pronounce ourselves convinced by it, and so rule in the party's favor.  That's not how an adversarial system of adjudication works."  *Xue Juan Chen v. Holder*, 737 F.3d 1084, 1085 (7th Cir. 2013).

{¶110} In view of the absence of authority to support appellant's position, we reject his argument that the BCI reports are inadmissible under Evid.R. 803(8)(b).  *See In re Application of Columbus S. Power Co.*, 129 Ohio St.3d 271, 2011-Ohio-2638, 951 N.E.2d 751, ¶ 14 (failure to cite legal authority or present argument that a legal authority applies is grounds to reject a claim); *Robinette v. Bryant*, 4th Dist. Lawrence No. 14CA28, 2015-Ohio-119, ¶ 33 ("It is within our discretion to disregard any assignment of error that fails to present any citations to cases or statutes in support").

C

{¶111} Appellant next contends that "the probative value of the reports was substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or of misleading the jury."
He asserts that the reports "bolstered" the accusers' testimony
by labeling them "victims" and that the reports "were needlessly
cumulative" when the BCI forensic scientists' trial testimony
already reported that the DNA analysis matched appellant.

{¶112} We again note that because appellant does not point to
the place in the record where he raised specific objections, he
has forfeited the right to raise this issue on appeal.
Regardless, we do not believe that the trial court erred by
admitting the BCI reports.

{¶113} Accordingly, based upon the foregoing reasons, we
overrule appellant's fifth assignment of error.

VI

{¶114} In his sixth assignment of error, appellant asserts
that sufficient evidence does not support his conviction and his
conviction is against the manifest weight of the evidence.

A

{¶115} Initially, we observe that "sufficiency" and "manifest
weight" present two distinct legal concepts. *Eastley v.
Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶
23 ("sufficiency of the evidence is quantitatively and
qualitatively different from the weight of the evidence"); *State
v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997),
syllabus.  A claim of insufficient evidence invokes a due

process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *Thompkins*, 78 Ohio St.3d at 386. When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Id.* at syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *E.g., Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶116} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *E.g., State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim

unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

**{¶117}** "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins*, 78 Ohio St.3d at 387. "The question to be answered when a manifest weight issue is raised is whether 'there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193–194, 702 N.E.2d 866 (1998), citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus. A court that considers a manifest weight challenge must "'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.'" *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 208, quoting *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 328. Reviewing courts must also bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v.*

*Murphy*, 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31.

"'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'" *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya*, 2d Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288 (Aug. 22, 1997).  As the *Eastley* court explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * *
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

*Id.* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).  Thus, an appellate court will leave the issues of evidence weight and witness credibility to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24; *accord State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, ¶ 6 ("We will not intercede as long as the trier

of fact has some factual and rational basis for its determination of credibility and weight").

{¶118} Accordingly, if the prosecution presented substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *E.g., Eley*; *accord Eastley* at ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th ed.1990) (judgment not against the manifest weight of evidence when "'"the greater amount of credible evidence"'" supports it). A court may reverse a judgment of conviction only if it appears that the fact-finder, when it resolved the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord McKelton* at ¶ 328. A reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175; *accord State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 166; *State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶119} We further note that "'"[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony."'" *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, ¶ 17 (4th Dist.), quoting *State v. Mason*, 9th Dist. Summit No. 21397, 2003-Ohio-5785, ¶ 17, quoting *State v. Gilliam*, 9th Dist. Lorain No. 97CA006757, 1998 WL 487085, *4 (Aug. 12, 1998). Moreover, a conviction is not against the manifest weight of the evidence even if the "evidence is subject to different interpretations." *State v. Adams*, 2d Dist. Greene Nos. 2013CA61, 2013-CA-62, 2014-Ohio-3432, ¶ 24.

{¶120} We also observe that, when an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction. *E.g., State v. Waller*, 4th Dist. Adams No. 17CA1044, 2018-Ohio-2014, ¶ 30. Thus, a determination that the weight of the evidence supports a conviction is also dispositive of the issue of sufficiency. *Id.*

B

{¶121} After our review of the evidence adduced at trial in the case sub judice, we do not believe that the evidence weighs heavily against appellant's rape convictions under R.C. 2907.02(A)(1)(c) and (A)(2). Those provisions read:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * * *

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

**{¶122}** Appellant first asserts that the evidence fails to support his 2907.02(A)(2) conviction because the evidence does not establish that he purposely compelled J.R. to submit to sexual contact by force or threat of force. In particular, appellant alleges that J.R. could have left at any time, or declined to crawl into the backseat with him, and once J.R. moved to the backseat, she "reasonably signaled" she "wished to engage in sexual activity with him." Appellant further argues that J.R. merely felt regret over the incident and that he did not purposely compel her to engage in sexual contact.

**{¶123}** The state, on the other hand, contends that appellant's conviction is not against the manifest weight of the evidence. The state points to testimony that J.R. did not want to engage in sexual contact with appellant, that she told

appellant to stop, and that appellant did not stop his advances.

{¶124} After our review, we agree with the state's view of the evidence. Because J.R.'s testimony contains ample competent and credible evidence that appellant purposely compelled her to engage in sexual contact by force or threat of force, appellant's R.C. 2907.02(A)(2) rape conviction is not against the manifest weight of the evidence. The jury was in the best position to hear the testimony, to assess witness credibility and the jury chose to believe the prosecution's witness when it resolved conflicts in the evidence. This is the function of the trier of fact. A jury is free to believe all, part or none of the testimony from any witness who testifies before the jury. Likewise, we believe that the record contains sufficient evidence to support the conviction.

2

{¶125} Appellant next argues that his R.C. 2907.02(A)(1)(c) rape conviction is against the manifest weight of the evidence. In particular, he contends that the evidence fails to support a finding that (1) K.H.'s alcohol consumption substantially impaired her ability to resist or consent, or (2) appellant "knew or had reasonable cause to believe K.H.'s ability to resist or consent was substantially impaired." Appellant claims that, because K.H. was conscious enough to invite appellant into her home, undress, and engage in sexual contact with him, the

evidence fails to show that K.H. was substantially impaired, or,

if so, that appellant knew, or had reasonable cause to believe,

that her ability to resist or consent was substantially

impaired.

{¶126} In *State v. Canterbury*, 4th Dist. Athens No. 13CA34,

2015-Ohio-1926, we discussed the meaning of "substantial

impairment":

> "The phrase 'substantial impairment' is not defined
> in R.C. 2907.02, nor has the Ohio Supreme Court provided
> any definition." *State v. Keeley*, [4th Dist. Washington
> No. 11CA5, 2012-Ohio-3564] at ¶ 16; citing *State v.
> Daniels*, Summit No. 25808, 2011-Ohio -6414, ¶ 6.
> However, the Ohio Supreme Court has stated, in regards
> to a sexual battery charge against a youth victim alleged
> to have an impairment due to alleged mental retardation,
> as follows:
> "The phrase 'substantially impaired,' in that it is
> not defined in the Ohio Criminal Code, must be given the
> meaning generally understood in common usage.   As
> cogently stated by the appellate court, substantial
> impairment must be established by demonstrating a
> present reduction, diminution or decrease in the
> victim's ability, either to appraise the nature of his
> conduct or to control his conduct." *State v. Zeh*, 31
> Ohio St.3d 99, 103-104, 509 N.E.2d 414 (1987).
>                 * * * *
> Further, "[w]hether a person is substantially
> impaired 'does not have to be proven by expert medical
> testimony; rather, it can be shown to exist by the
> testimony of people who have interacted with the victim,
> and by allowing the trier of fact to do its own
> assessment of the person's ability to appraise or
> control his or her conduct.'" *State v. Lasenby*, 3rd
> Dist. Allen No. 1-13-36, 2014-Ohio-1878, ¶ 27; quoting
> *State v. Brady*, 8th Dist. Cuyahoga No. 87854, 2007-Ohio-
> 1453, ¶ 78; *State v. Brown*, 3rd Dist. Marion No. 9-09-
> 15, 2009-Ohio-5428, ¶ 21.   Thus, the determination of
> substantial impairment is made "on a case-by-case basis,
> providing great deference to the fact-finder." *Lasenby*

at ¶ 27; citing *Brown* at ¶ 22.

**{¶127}** Additionally, voluntary intoxication or impairment is included in the terms "mental or physical condition" as used in R.C. 2907.02(A)(1)(c). *Lasenby* at ¶ 28; citing *State v. Harmath*, 3rd Dist. Seneca No. 13-06-20, 2007-Ohio-2993, ¶ 14; *see also State v. Boden*, 9th Dist. Summit No. 26623, 2013-Ohio-4260, ¶ 20; *State v. Cedeno*, 8th Dist. Cuyahoga No. 98500, 2013-Ohio-821, ¶ 20. Further, courts have held that "[t]he consumption of large amounts of alcohol in a short period of time is evidence that voluntary intoxication caused substantial impairment." *Lasenby* at ¶ 28; citing *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, ¶ 22 (2nd Dist.); *see also State v. Lindsay*, 3rd Dist. Logan No. 8-06-24, 2007-Ohio-4490, ¶ 20.

*State v. Canterbury*, 4th Dist. Athens No. 13CA34, 2015-Ohio-1926, ¶ 57-59.

**{¶128}** Factors that courts identify as evidence of substantial impairment due to intoxication include: (1) the victim consumed large quantities of alcohol; (2) the victim "passed out"; and (3) the victim cannot recall, or has difficulty remembering, the incident. *State v. Dailey*, 4th Dist. Adams No. 18CA1059, 2018-Ohio-4315, ¶ 51 (rape victim consumed large quantity of alcohol and stated she "passed out"); *State v. Kuck*, 2016-Ohio-8512, 79 N.E.3d 1164, ¶ 95 (2nd Dist.)

(substantial impairment established when victim "consumed at least ten alcoholic drinks"); *State v. Lasenby*, 3rd Dist. Allen No. 1-13-36, 2014-Ohio-1878, ¶ 28 (consuming large quantity of alcohol in short time period and inability to recall events constitutes evidence of substantial impairment); *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, ¶ 24 (2d Dist.) ("stumbling, falling, slurred speech, passing out, or vomiting" evidence of substantial impairment).

**{¶129}** We also note that evidence that a rape victim displayed some awareness, or could ambulate from one location to another, does not negate a finding of substantial impairment. *Dailey* at ¶ 52; *State v. Bentz*, 2017-Ohio-5483, 93 N.E.3d 358 (3rd Dist.), ¶ 105 (rejecting argument that weight of evidence showed victim "not substantially impaired because she was able to ambulate out of [defendant]'s bedroom, to [a] vehicle, and to the police department without assistance"). In *Dailey*, for example, the rape victim showed some awareness by feigning sleep in the hope that the defendant would cease the activity. *Id.* at ¶ 5. We, nonetheless, upheld the defendant's substantial-impairment rape conviction because we did not believe that the victim's ability to be sufficiently aware to feign sleep negated the substantial-impairment element. Rather, being aware does not equate to a finding that the victim failed to "experience[] a 'reduction, diminution or decrease' in her abilities to

appraise the nature of, or control, her conduct." *Id.* at ¶ 52, quoting *Zeh*, 31 Ohio St.3d at 103–104.

{¶130} In the case sub judice, after our review we believe that the record contains ample competent and credible evidence of K.H.'s substantial impairment at the time appellant engaged in sexual conduct with her. K.H. testified she spent several hours consuming numerous alcoholic beverages and she does not remember how she returned home. She explained she remembers sitting on her porch and talking with appellant, but after that point, she could not remember what occurred. Instead, she indicated that her next recollection is waking up the following day. The inability to recall what transpired throughout the night illustrates that K.H. experienced a "reduction, diminution or decrease in [her] ability, either to appraise the nature of [her] conduct or to control [her] conduct." *Zeh*, 31 Ohio St.3d at 103–104. If K.H. cannot recall her conduct, the jury reasonably could have inferred that she had a reduction, diminution, or decrease in her ability to either assess the nature of her conduct or to control her conduct.

{¶131} Appellant, however, contends that he did not know, or have reasonable cause to believe, that K.H.'s ability to resist or consent was substantially impaired. To support this claim, appellant relies upon (1) his testimony that he did not think that K.H. appeared to be under the influence of alcohol, and (2)

the lack of testimony from K.H.'s companions on the night in question to suggest that K.H. had displayed signs of impairment.

{¶132} Under R.C. 2907.02(A)(1)(c), an accused's conduct is not criminal unless, inter alia, the accused engages in sexual conduct with another when the accused knows, or has reasonable cause to believe, that the person's ability to consent or resist is substantially impaired due to a mental or physical condition.

{¶133} According to R.C. 2901.22(B),

> [a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

We observe that "intent, lying as it does within the privacy of a person's own thoughts, is not susceptible of objective proof." *State v. Garner*, 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995). Thus, "[i]ntent '"can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances."'" *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998), quoting *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990), quoting *State v. Huffman*, 131 Ohio St. 27, 1 N.E.2d 313, paragraph four of the syllabus (1936). Consequently, "whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances * * *." *State v. Huff*, 145 Ohio App.3d 555, 563,

763 N.E.2d 695 (1st Dist.2001).

{¶134} Accordingly, whether an accused knew, or had reasonable cause to believe, that a victim was substantially impaired for purposes of R.C. 2907.02(A)(1)(c) may be inferred from the surrounding facts and circumstances, including the victim's demeanor. *State v. Jones*, 8th Dist. Cuyahoga No. 101311, 2015-Ohio-1818, ¶ 43, citing *State v. Novak*, 11th Dist. Lake No. 2003-L-077, 2005-Ohio-563, ¶ 25. Evidence that should alert an accused of a victim's substantial impairment may include evidence that the victim was "stumbling, falling, slurr[ing] speech, passing out, or vomiting." *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, ¶ 24 (2d Dist.). Additionally, "[a] jury can reasonably conclude that the defendant knew the victim was substantially impaired and unable to object to the defendant's conduct if there was evidence that the victim was in a state of deep sleep or drunkenness." *State v. Anderson*, 6th Dist. Wood No. WD-04-035, 2005-Ohio-534, ¶ 41; *accord State v. Palmer-Tesema*, 8th Dist. Cuyahoga No. 107972, 2020-Ohio-907, ¶ 60 ("sleep constitutes a mental or physical condition that substantially impairs a person from resisting or consenting to sexual conduct."); *State v. Graves*, 8th Dist. Cuyahoga No. 88845, 2007-Ohio-5430, ¶ 22 ("sleep is a mental or physical condition that substantially impairs a person from resisting or consenting to sexual

conduct").

{¶135} For example, a victim's testimony that she "passed out" and awoke to the defendant "in between [her] legs and [her] pants and underwear down and him licking [her] on [her] vagina" permits a finding that the defendant knew or had reasonable cause to believe that the victim's ability to resist or consent was substantially impaired because of a physical condition. *State v. Miller*, 3rd Dist. Logan No. 8-19-02, 2019-Ohio-4121, ¶ 38. Additionally, a victim who testifies that she experienced "blackouts" suggests that the victim was unconscious. *Kuck* at ¶ 97. A victim's unconscious state, being obviously ascertainable, also permits a finding that the defendant knew or had reasonable cause to believe that the victim's ability to resist or consent was substantially impaired because of a physical condition. *State v. Eberth*, 7th Dist. Mahoning No. 07-MA-196, 2008-Ohio -6596, ¶ 49 (evidence victim unconscious during sexual contact "more than enough to prove that she was substantially impaired"); *see State v. Williams*, 9th Dist. Lorain App. No. 02CA008112, 2003-Ohio-4639 (defendant's awareness victim passed out after ingesting a substantial amount of alcohol is evidence that he knew, or should have known, that the victim substantially impaired). Being unconscious does "not simply impair [a victim] from resisting or consenting." *Kuck* at ¶ 97. Instead, it precludes the victim from taking any action

at all.  *Id.*

{¶136} In contrast, when a rape victim testifies that she "was aware of her surroundings and coherent enough to make decisions about the extent of her participation in the events in question," courts have concluded that this evidence fails to show that the defendant knew, or had reasonable cause to believe, that the victim was substantially impaired.  *State v. Rivera*, 8th Dist. Cuyahoga No. 97091, 2012-Ohio-2060, ¶ 28.

{¶137} After our review in the case sub judice, we believe that the state presented ample competent and credible evidence to establish that appellant knew, or had reasonable cause to know, that K.H. was substantially impaired.  K.H. stated she has no memory of what happened between the time that she spoke with appellant outside of her residence and when she awoke the next day.  Also, the forensic toxicologist testified that K.H.'s blood-alcohol content, when submitted at 5:00 p.m. the following day, was .146%.  He explained that the rate of alcohol dissipation for women is .018% per hour and the varying degrees of intoxication: (1) intoxication becomes life-threatening once the blood-alcohol level approaches .35 or .4, and (2) at the lower concentrations, between .05 and .1, a person's inhibitions and critical-thinking skills become impaired.  A person with a .1 blood-alcohol concentration will display some deficits in reaction time and exhibit coordination difficulties, and when a

person's content reaches .2, the person can become "confused" and "disoriented."  At the higher levels, around a .3 and beyond, a person may have memory problems, and once a person reaches "a .3 and beyond," the person "enter[s] a stage of intoxication that can be associated with stupor or being comatose."  The toxicologist indicated that a person will not be "forming memory very well if they're in a stupor or they're unresponsive or unconscious."

{¶138} Here, K.H.'s testimony, in addition to the forensic toxicologist's testimony, permitted the jury to infer that K.H. was unconscious or passed out when appellant engaged in sexual conduct with her.  K.H. stated she has no memory of the events (or very little memory according to the SANE report) between the moment she spoke with appellant while she sat on her front porch and when she awoke the next day at 1:30 p.m.  Her memory lapse, according to the forensic toxicologist, indicates either "in a stupor," "unresponsive[,] or unconscious."  For appellant to claim to be unaware that K.H. was in any of these states is specious, and the jury obviously did not find appellant's testimony credible.  As the trier of fact, it is well within the jury's province to discredit appellant's testimony.

{¶139} Consequently, in the case at bar it appears that the jury opted to believe K.H.'s testimony that she did not consent to engaging in sexual conduct with appellant and that she was

unaware of, or had scant memory of, the nature of any sexual contact that had occurred until she awoke the next day when she noticed that her body displayed indicators of sexual activity. We find nothing manifestly unjust with the jury's decision to discredit appellant's testimony that he and K.H. engaged in consensual sexual conduct. Once again, a trier of fact may choose to believe all, part or none of the testimony of any witness who appears before it. Here, the jury believed K.H.'s testimony and discounted appellant's testimony. Obviously, the jury is in the best position to observe the witnesses and to assess their credibility.

{¶140} Therefore, we do not agree with appellant that his R.C. 2707.02(A)(1)(c) conviction is against the manifest weight of the evidence. The state presented substantial competent and credible evidence that K.H. was substantially impaired and that appellant knew, or had reasonable cause to believe, that K.H. was substantially impaired. For these same reasons, we believe that the record contains sufficient evidence to support appellant's R.C. 2707.02(A)(1)(c) rape conviction.

{¶141} Accordingly, based upon the foregoing reasons, we overrule appellant's sixth assignment of error.

VII

{¶142} In his seventh assignment of error, appellant asserts that the trial court's sentence is clearly and convincingly

contrary to law.  Appellant does acknowledge that his sentences "fall within the applicable [statutory} ranges available," but asserts that the trial court did not correctly consider "the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12."  *Id.*

**{¶143}** When reviewing felony sentences, appellate courts apply the standard of review outlined in R.C. 2953.08(G)(2). *State v. Prater*, 4th Dist. Adams No. 18CA1069, 2019-Ohio-2745, ¶ 12, citing *State v. Graham*, 4th Dist. Adams No. 17CA1046, 2018-Ohio-1277, ¶ 13.  Under R.C. 2953.08(G)(2), "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion."  Instead, R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
> (b) That the sentence is otherwise contrary to law.

**{¶144}** A defendant bears the burden to establish, by clear and convincing evidence, (1) that a sentence is either contrary to law or (2) that the record does not support the specified findings under R.C. 2929.13(B), R.C. 2929.13(D), R.C.

2929.14(B)(2)(e), 2929.14(C)(4), or R.C. 2929.20(I).  *State v.*

*Behrle*, 4th Dist. Adams No. 20CA1110, 2021-Ohio-1386, ¶ 48;

*State v. Shankland*, 4th Dist. Washington Nos. 18CA11 and 18CA12,

2019-Ohio-404, ¶ 20.

> [C]lear and convincing evidence is that measure or
> degree of proof which is more than a mere 'preponderance
> of the evidence,' but not to the extent of such certainty
> as is required 'beyond a reasonable doubt' in criminal
> cases, and which will produce in the mind of the trier
> of facts a firm belief or conviction as to the facts
> sought to be established.

*Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954),

paragraph three of the syllabus.

**{¶145}** "A court reviewing a criminal sentence is required by

R.C. 2953.08(F) to review the entire trial-court record,

including any oral or written statements and presentence-

investigation reports." *State v. Bryant*, ___ Ohio St.3d ___,

2022-Ohio-1878, ___ N.E.3d ___, ¶ 20, citing R.C. 2953.08(F)(1)

through (4).  We additionally observe, however, that "[n]othing

in R.C. 2953.08(G)(2) permits an appellate court to

independently weigh the evidence in the record and substitute

its judgment for that of the trial court concerning the sentence

that best reflects compliance with R.C. 2929.11 and 2929.12."

*State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d

649, ¶ 42.  In other words, "R.C. 2953.08(G)(2) does not allow

an appellate court to modify or vacate a sentence based on its

view that the sentence is not supported by the record under R.C.

2929.11 and 2929.12." *Bryant* at ¶ 22. Consequently, appellate courts cannot review a felony sentence when "the appellant's sole contention is that the trial court improperly considered the factors of R.C. 2929.11 or 2929.12 when fashioning that sentence." *State v. Stenson*, 6th Dist. Lucas No. L-20-1074, 2021-Ohio-2256, ¶ 9, citing *Jones* at ¶ 42; *accord State v. Orzechowski*, 6th Dist. Wood No. WD-20-029, 2021-Ohio-985, ¶ 13 ("In light of *Jones*, assigning error to the trial court's imposition of sentence as contrary to law based solely on its consideration of R.C. 2929.11 and 2929.12 is no longer grounds for this court to find reversible error."); *State v. Loy*, 4th Dist. Washington No. 19CA21, 2021-Ohio-403, ¶ 30. We also observe that "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." *Jones* at ¶ 20.

{¶146} Furthermore, "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Jones* at ¶ 32. "[O]therwise contrary to law" means "'in violation of statute or legal regulations at a given time.'" *Id.* at ¶ 34 quoting Black's Law Dictionary 328 (6th Ed.1990), cited with approval in *Bryant* at ¶ 22. Thus, for example, "when a trial court imposes a sentence based on factors or considerations that are

extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law." *Bryant* at ¶ 22.

{¶147} In the case sub judice, appellant has not argued that the record fails to support the findings under R.C. 2929.13(B), R.C. 2929.13(D), R.C. 2929.14(B)(2)(e), 2929.14(C)(4), or R.C. 2929.20(I). Appellant agrees that his sentences "fall within the applicable ranges available," but instead asserts that the issue is "whether the trial court considered the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12."

{¶148} As we pointed out above, however, R.C. 2953.02(G)(2) does not allow this court to independently review the record to determine whether the trial court chose an appropriate sentence based on the R.C. 2929.11 and R.C. 2929.12 factors. *See Jones, supra; State v. Hughes*, 4th Dist. Adams No. 21CA1127, 2021-Ohio-3127, ¶ 41 ("R.C. 2953.08(G)(2) does not give appellate courts broad authority to review sentences to determine if they are supported by the record"). Therefore, we may not consider the issue of whether the trial court properly considered the purposes and principles of felony sentencing listed in R.C. 2929.11 and the seriousness and recidivism factors listed in R.C. 2929.12. We note, however, that the trial court did, in fact, indicate that it did fully consider the factors listed in

each section.  Furthermore, we find nothing in the record to suggest that the trial court's sentencing decision is contrary to law.  Rather, appellant agrees that his prison sentence is authorized under the relevant statutes.

**{¶149}** Accordingly, based upon the foregoing reasons, we overrule appellant's seventh assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of 60 days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the 60-day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the 45-day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                              Peter B. Abele, Judge

NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.